(No. 37339.—

TRUSTEES OF SCHOOLS OF TOWNSHIP 35 NORTH, RANGE 14 EAST OF THE 3RD PRINCIPAL MERIDIAN, COOK COUNTY, ILLINOIS, Appellants, v. EDWARD M. SONS *et al.,* Appellees.

*Opinion filed February 1, 1963.*

Norman, Englehardt, Zimmerman, Franke & Lauritzen, and Thomas A. Foran, of Chicago, (Harold W. Norman, Allyn J. Franke, Thomas A. Foran, and Robert E. Wiss, of counsel,) for appellants.

Burton Evans and Edward T. Havey, of Chicago, and Robert A. Meier, Jr., of Chicago Heights, for appellees.

Mr. Justice Schaefer delivered the opinion of the court:

Since 1909, school districts with a population of less than 1000 have been denied authority to acquire by eminent domain any tract of land "outside the limits of any incorporated city or village, and within forty rods of the dwelling of the owner of the land." School districts with a population of more than 1000 have never been subject to such a restriction. The question in this case is whether, in course of its recodification of the School Code in 1961, the General Assembly has imposed that restriction upon them. The superior court of Cook County held that it had, and so dismissed the eminent domain petition in this case, which sought to acquire, for a district of more than 1000 population, land located within 40 rods of the dwellings of its owners. The condemnor has appealed directly to this court. Ill. Rev. Stat. 1961, chap. 47, par. 12.

The restriction here involved came into the law in the School Law of 1909, and it was made applicable only to districts "having a population of fewer than one thousand

inhabitants." (Laws of 1909, pp. 371, 376, secs. 103, 120; *cf.* p. 377-8, sec. 127.) Throughout the successive changes in the school law over the intervening years it has remained applicable only to those very small school districts. In *Trustees of Schools* v. *Schroeder,* 25 Ill.2d 289, we described the pattern of the relevant provisions of the School Code as it existed in 1959. At that time the statutory provisions with respect to school districts with a population of more than 1000 but less than 500,000, which are governed by seven-man boards of education, were centered in article 7, and by section 7—17 of the Code those districts were authorized, without any restriction, to acquire land by eminent domain. (Ill. Rev. Stat. 1959, chap. 122, par. 7—17.) The statutory provisions with respect to school districts with less than 1000 inhabitants, which are governed by three-man boards of school directors, were centered in article 6 of the Code, which did not contain any grant of the power of eminent domain. These districts derived their authority to condemn land from section 14—7 of the Code which contained the limitation in question, expressed in the following language: "But no tract of land outside the limits of any incorporated city or village and within 40 rods of the dwelling of the owner of the land shall be taken by the board of directors, created in Article 6, without the owners consent; * * *." Ill. Rev. Stat. 1959, chap. 122, par. 14—7.

In the *Schroeder* case we held that the limitation upon the power of eminent domain expressed in section 14—7 of the Code did not apply to school districts established under article 7, despite the fact that section 7—14 of the Code contained the following provisions: "The board of education [under article 7] has all the powers of school directors as set forth in Article 6, *is subject to the same limitations,* and in addition thereto has the powers enumerated in the subsequent sections of this Article." Ill. Rev. Stat. 1959, chap. 122, par. 7—14. (Italics supplied.)

The School Code of 1961 was submitted to the General Assembly by Illinois School Problems Commission No. 6, in order to codify and simplify the existing laws. To achieve this objective the former articles 6 and 7 were consolidated into a single article 10, designed to cover all of the powers and duties of both types of school boards. Previous statutory references to "boards of directors" and "boards of education" were changed by substituting the single word "board" in the new Code.

The former section 7—17 was included in the 1961 School Code, without substantive change, as section 10—20.10. The former section 14—7 was included as section 16—6 and it is the revision of that section that gives rise to the present controversy. The relevant portion of section 16—6 of the new Code is as follows, with material added in course of codification printed in italics, and material omitted printed and stricken: "But no tract of land outside the limits of any incorporated city or village and within 40 rods of the dwelling of the owner of the land shall be taken by the board of directors created in Article § *10* without the owner's consent; * * *." Ill. Rev. Stat. 1961, chap. 122, par. 16—6.

A literal reading of section 16—6 of the Code of 1961 thus makes the restriction upon the power of eminent domain applicable to board-of-education districts with a population between 1000 and 500,000 as well as to board-of-school-directors districts with a population of less than 1000. The defendants therefore argue that no interpretation of the Code is necessary, and that in any event the courts are without power to alter, by construction, the literal wording of the section. We are of the opinion, however, that the relevant circumstances indicate clearly that the change in the language of the new section was an inadvertent result of the effort to compress and simplify, and that there was no legislative intention to make a change.

In the entire history of the development and enactment

of the Code of 1961 there is no suggestion that any changes of substance were intended. The report of the Commission stated: "31. *We recommend a recodification of the School Code.* The last limited codification of the School Code was in 1945, and it has grown tremendously complex and confusing since that time. One of the major projects of the Commission this biennium has been the preparation of a simplified code which was ready for introduction upon the convening of the Seventy-second General Assembly." (Report of School Problems Commission No. 6, March, 1961, p. 25.) The Code was introduced early in the legislative session and it was expeditiously enacted by both houses of the General Assembly without reference to committee and without any amendment to the body of the bill in either house. It was signed by the Governor on March 18, 1961.

The Code occupies more than 175 pages of double column printed text in the Illinois Revised Statutes and realistically it is most unlikely that any attempt to analyze the bill for substantive changes could have been made so speedily and without committee action. All of the available indications point to the conclusion that no change in substance was intended by the Code, and they negative any intention to make an important change in a policy that had been in effect continuously for more than 50 years. Changes of substance were recommended by School Problems Commission No. 6, (Report of School Problems Commission No. 6, March 1961, pp. 11-27,) but none of them were included in the codification which it submitted to the General Assembly. These changes of substance were instead embodied in separate bills which were presented to the General Assembly after the Code had been adopted. The purpose seems clearly to have been to codify first without altering substance, and then to key substantive changes into the new Code after its adoption.

The situation here presented is much like that which confronted the court in *Scofield* v. *Board of Education,* 411

Ill. 11. That case involved a codification of laws relating to school elections. The codification, however, omitted from the qualifications of voters at school elections any requirement of citizenship or age, and it specifically stated that the provisions of the Election Code should not apply unless the School Code expressly so provided. The court held that in determining the intent of the legislature it was not confined to the literal wording of the statute before it. It analyzed the provisions of the report of the School Problems Commission which had recommended the codification, and the legislative history of the enactment of the bills involved in the codification. From that analysis the court concluded that the requirement of citizenship in the United States and the attainment of age 21 were to be read into the School Code, because otherwise "grave, absurd and ridiculous consequences not contemplated or intended by the General Assembly" would result. 411 Ill. at p. 21.

In *People ex rel. Barrett* v. *Anderson*, 398 Ill. 480, a congressional reapportionment statute had described certain territory as "the village of Stickney" instead of "the township of Stickney", with the result that all of the territory outside of the village but within the township was omitted from the statute. The court satisfied itself that it was not the intention of the General Assembly to exclude any territory and therefore read into the statute the word "township" instead of "village" stating, "while courts are and should be cautious about adding words, as such, to a statute generally, they will not hesitate to read into the sense of some section or provision a qualifying or expanding expression plainly implied by the general context of the act, which has been palpably omitted and which is necessary to prevent the legislative purpose from failing in one of its material aspects." 398 Ill. at 485.

So in the case now before us, it appears that the draftsman, in the course of accommodating other provisions of the Code to the consolidation of the former articles 6 and 7

into the new article 10, mechanically struck from the new section 16—6 the restrictive reference to "the board of directors created in Article 6", and substituted a reference to "the board created in Article 10." As we have pointed out, there is no suggestion of any purpose to effect a change in the long-standing policy that gave to all but the smallest districts the power of eminent domain, free from the asserted restriction. The defendants point to the fact that the number of districts with a population of less than 1000 has sharply declined in recent years. But we see no reason to infer from that fact an intention to impose a new restriction upon the larger districts, which obviously require larger school sites.

We hold, therefore, that the asserted restriction upon the power of eminent domain has not been made applicable to school districts with a population of more than 1000. It follows that the eminent domain petition should not have been dismissed, and the judgment of the superior court of Cook County dismissing the petition, is reversed and the cause is remanded to that court for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*