LE ROY KELMAN, Plaintiff-Appellant, v. THE UNIVERSITY OF CHICAGO *et al.*, Defendants-Appellees.

Second District   No. 2—87—0334

Opinion filed February 3, 1988.—Rehearing denied March 17, 1988.

Peregrine, Stime, Newman, Ritzman & Bruckner, Ltd., of Wheaton (Roy I. Peregrine, of counsel), for appellant.

Hugh C. Griffin, David C. Hall, and Harold L. Jacobson, all of Lord, Bissell & Brook, of Chicago, for appellees.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, LeRoy Kelman, filed a multicount amended complaint in the circuit court of Du Page County seeking compensatory and punitive damages for injuries allegedly arising out of the diagnosis and treatment of his work-related illness. Following the circuit court's granting of summary judgment in favor of the various defendants,

plaintiff appealed.

Plaintiff's amended complaint named as defendants the University of Chicago, the University of Chicago Hospitals and Clinics, Northwestern University, the McGaw Medical Center of Northwestern University, Dr. William Barclay, Dr. Asher Finkel, Dr. Francis Strehl, Dr. Maurice Bogdonoff, and Dr. David Cugell. Dr. Bogdonoff was dismissed with prejudice pursuant to plaintiff's motion. Subsequent to the filing of this appeal, Northwestern University, McGaw Medical Center, and Dr. Cugell settled with plaintiff and are no longer parties to the appeal.

The remaining counts of the amended complaint relevant to this appeal allege the following: (1) fraud on the part of defendants University of Chicago, University of Chicago Hospitals and Clinics, and Drs. Barclay, Finkel and Strehl; (2) conspiracy to defraud on the part of those same five defendants; (3) medical malpractice on the part of University of Chicago Hospitals and Clinics and Dr. Barclay; and (4) wilful and wanton conduct by University of Chicago Hospitals and Clinics and Dr. Barclay. Plaintiff's suit does not seek to recover for the alleged contraction of berylliosis. Any such remedy would be provided by provisions of the Illinois Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*) and the Illinois Workers' Occupational Diseases Act (Ill. Rev. Stat. 1985, ch. 48, par. 172.36 *et seq.*).

The only issue on appeal is whether the trial court properly granted summary judgment in this case.

Plaintiff is a metallurgist employed by the University of Chicago (University) and currently assigned to the Argonne National Laboratories (Argonne). He was first employed by the University in 1944. He worked at the "Manhattan Project" until 1948, when he was assigned to Argonne. While plaintiff worked at the "Manhattan Project," he was exposed to a toxic substance, beryllium dust.

During his employment, plaintiff was periodically given physical examinations which included chest X rays. In 1957, plaintiff was referred to Dr. Barclay at the University of Chicago Hospitals and Clinics. Following his examination, plaintiff was advised he had a non-work-related lung condition known as histoplasmosis. Dr. Barclay advised the University, however, that the diagnosis of histoplasmosis was highly improbable and that plaintiff had lesions on his lungs.

During the late 1950s and all of the 1960s, the University continued to provide physical examinations and chest X rays to plaintiff. Apparently, several radiologists reported that the X rays indicated an active and developing granulomatous disease in plaintiff's lungs.

Sometime in 1970, Dr. Finkel, who was then the health division director of Argonne, advised plaintiff to seek an independent lung specialist. Dr. Finkel referred plaintiff to Dr. Cugell at the McGaw Medical Center of Northwestern. Apparently, Dr. Cugell was a consultant to the University during the time he treated plaintiff.

During most of the 1970s, Dr. Cugell continued periodic clinical and X-ray examinations of plaintiff. After a request by plaintiff in late 1979, Dr. Cugell referred him to the Mayo Clinic for examination by a sarcoidosis expert. A lung biopsy was performed, and in April 1980, Dr. Cugell informed plaintiff that he had a lung disease known as berylliosis which is caused by exposure to beryllium dust. Plaintiff subsequently initiated this lawsuit in 1982.

Defendants' motion for summary judgment on all counts was granted. Although they filed their own motion, defendants adopted the arguments contained in the summary judgment motion of Northwestern University and Dr. Cugell. Defendants relied, in their summary judgment motion, on the deposition of Dr. John Stoeckle, plaintiff's only proposed expert witness. Plaintiff, in his objection to the motion for summary judgment, relied exclusively on the deposition of Dr. Stoeckle. In pertinent part, Dr. Stoeckle's deposition reveals that failing to inform plaintiff of the potential diagnosis of berylliosis did not impair his physiological function or medical future, although the patient may feel "victimized" by not having that information.

Plaintiff contends that defendants have offered no evidence which creates a factual dispute as to his allegations of fraud and conspiracy to defraud, nor with respect to the allegations of wilful and intentional conduct. He further argues that defendants' summary judgment motion, which adopted Dr. Cugell's summary judgment motion, only challenged the medical malpractice allegations and did not address his claims of fraud and conspiracy. Finally, he posits that, even if no causal relationship can be shown between Dr. Cugell's failure to advise him of his berylliosis and his present physical condition, he has still suffered damages as a result of being misinformed by the University.

Defendants respond in several respects. First, they argue that plaintiff had the affirmative duty, upon their motion for summary judgment, to supply facts and evidence to establish a cognizable cause of action and that in this case plaintiff offered no evidence of proximate cause or damage. Second, they contend that the Illinois Workers' Compensation Act and the Illinois Workers' Occupational Diseases Act provide the exclusive remedy in this case. Third, defendants maintain that plaintiff failed to provide any evidence to establish his

allegations of fraud or conspiracy.

■ We begin by noting that points not argued or supported by authority are considered waived. (107 Ill. 2d R. 341(e); *People ex rel. Aldworth v. Dutkanych* (1986), 112 Ill. 2d 505, 511, 493 N.E.2d 1037; *Jenkins v. Wu* (1984), 102 Ill. 2d 468, 483, 468 N.E.2d 1162.) Even though plaintiff appeals summary judgment as to the negligence and wilful and wanton counts of his complaint, he provides no argument or citation of authority in his brief. We find, therefore, that plaintiff's challenge to the granting of summary judgment in defendants' favor as to those two counts has been waived.

Although defendants make several arguments in support of the summary judgment order as to the fraud and conspiracy allegations, we find their contention on the damages question to be dispositive.

■ The purpose of summary judgment is to determine whether there are any genuine issues of material fact (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867), and it should only be granted when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c).) Although summary judgment is an expeditious method of disposing of a lawsuit, it should only be allowed when the right of the moving party is clear and free from doubt. (*Purtill*, 111 Ill. 2d at 240.) The court must consider all of the evidence before it and construe the evidence strictly against the movant and liberally in favor of the nonmovant. (111 Ill. 2d at 240.) Furthermore, if the moving party supplies facts which, if not contradicted, would entitle such party to judgment as a matter of law, the opposing party cannot rely on the pleadings alone to raise issues of material fact. (111 Ill. 2d 229, 240-41, 489 N.E.2d 867.) The reviewing court's function is limited to a determination of whether the trial court correctly ruled that no genuine issue of material fact has been raised, and if none was raised, whether judgment as a matter of law was correctly entered. *Fuller v. Justice* (1983), 117 Ill. App. 3d 933, 938, 453 N.E.2d 1133.

■ Fraud consists of a false statement of material fact known or believed to be false by the person making it, intent to induce the other person to act, action in reliance on the truth of the statement, and damages resulting from such reliance. (*Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 286, 402 N.E.2d 599.) Fraud may also be established where an omission or concealment of a material fact is intended to deceive under circumstances which create the opportunity and duty to speak. (*Tan v. Boyke* (1987), 156 Ill. App. 3d 49, 54, 508

N.E.2d 390.) In either case, damages or injury are a necessary element of the tort. See *Soules*, 79 Ill. 2d at 286, 402 N.E.2d at 601; *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 332, 371 N.E.2d 634.

■ Here, plaintiff alleged that, prior to April 1980, the University and its medical staff engaged in a course of conduct intended to deceive him and to conceal fraudulently from him the true nature of his physical condition and the ramifications of his exposure to beryllium dust. Specifically, he claims that the University knew of his exposure to beryllium dust between 1944 and 1948, knew that berylliosis was a possible result of that exposure, knew that he had a developing lung disease, and intentionally failed to advise him that he had berylliosis or that there was a potential to develop the disease until they did so in April 1980. Further, plaintiff claims that defendants knew or should have known that their failure to inform him that he had berylliosis would cause his condition to worsen and that, in fact, he did suffer additional physical impairment as a result of defendant's deception. His conspiracy count merely realleges the same facts and additionally claims that the various defendants intentionally acted in agreement to defraud him.

There is no evidence, however, to refute defendants' evidence that no damages arose out of the alleged fraud and conspiracy. Dr. Stoeckle stated that there is a significant difference of medical opinions as to the appropriate time to administer steroid treatment and that he had no criticism of plaintiff's not being treated with steroids until he demonstrated symptoms, as he did in 1979. Furthermore, Dr. Stoeckle stated that plaintiff suffered no physical impairment as a result of not being informed of the actual nature of his illness. Plaintiff offered no evidence to refute the deposition testimony of Dr. Stoeckle. On this unrefuted evidence that no damages resulted from the alleged fraud and conspiracy, defendants were entitled to summary judgment as a matter of law.

For the reasons stated above, we affirm the trial court's granting of summary judgment in favor of all defendants herein.

Affirmed.

NASH and DUNN, JJ., concur.