GLEICHER, FRIBERG AND ASSOCIATES, M.D., S.C., Plaintiff-Appellee, v. UNIVERSITY OF HEALTH SCIENCES, THE CHICAGO MEDICAL SCHOOL, Defendant-Appellant and Counterplaintiff (Herman Finch *et al.*, Defendants; Norbert Gleicher *et al.*, Counterdefendants).

First District (6th Division) Nos. 1—91—0064, 1—91—1230 cons.

Opinion filed December 20, 1991.

78

McDermott, Will & Emery, of Chicago (Howard L. Kastel and William P. Schuman, of counsel), for appellant.

Law Offices of Michael J. Rovell, of Chicago (Michael J. Rovell and Lisa I. Fair, of counsel), for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Gleicher, Confino & Associates, M.D., S.C., formerly known as Gleicher, Friberg & Associates, M.D., S.C. (GFA), brought suit against defendant University of Health Sciences/The Chicago Medical School (UHS/CMS) after defendant refused to honor its alleged contractual obligation to appoint Dr. Norbert Gleicher to its faculty. The trial court granted partial summary judgment in GFA's favor as to count III, and awarded a mandatory, permanent injunction requiring defendant to honor Dr. Gleicher's faculty appointment. Defendant's cross-motion for partial summary judgment on that issue was denied.

In this appeal, defendant contends that the trial court erroneously granted plaintiff's motion for summary judgment because numerous material issues of disputed fact existed; that the injunctive relief awarded to Dr. Gleicher was improper without an evidentiary hearing; that the court improperly imposed a personal relationship upon feuding parties; that Dr. Gleicher's subsequent resignation from his position as chairman of the Mount Sinai Hospital (Hospital) obstetrical/gynecology (OB/GYN) department makes the relief sought moot; that the trial court's award of a mandatory permanent injunction without an evidentiary hearing deprived defendant of its constitutional right to due process; and that the permanent mandatory injunction prevents defendant from enforcing its bylaws which would prohibit Dr. Gleicher from using its name in the publication of his forthcoming book.

GFA is a corporation rendering medical services in the OB/GYN field. Dr. Gleicher, president of GFA, was also chairman of the Hospital OB/GYN department. The majority of GFA's physician employees also had staff privileges at the Hospital. It is customary in the Chi-

cago medical community for hospitals and physicians to be affiliated with only one medical school.

On July 2, 1987, defendant and the Hospital entered into a master affiliation agreement for a term of 20 years establishing the Hospital as a major teaching affiliate of UHS/CMS. The master agreement states that it is intended to serve as a general statement of the terms and conditions of the parties' affiliation, and that separate departmental subagreements would be drawn to detail the operational terms of the relationship between reciprocal departments of the medical school and the Hospital. The subagreements would become addenda to the master agreement. The master agreement provided that members of the Hospital medical staff who meet the standards prescribed by UHS/CMS shall be given three-year appointments to the faculty in accordance with the rules and regulations of the UHS/CMS bylaws.

On December 31, 1987, a subagreement to the master agreement was entered into by defendant and the Hospital. In the subagreement, which detailed the terms and conditions of the affiliation between defendant and the Hospital, Dr. Gleicher was appointed to the UHS/CMS faculty. The subagreement was subject to all the terms and conditions set forth in the master agreement, and in the event of any conflicting provisions between the two agreements, the terms of the subagreement were to take precedence. Although the subagreement provided signature lines for representatives of the Hospital as well as defendant, it was signed only by the respective department chairmen (Dr. Uwe Freese on behalf of defendant, and Dr. Gleicher as the chairman of the Hospital's OB/GYN department). The subagreement did not include the salaries to be paid to the physicians by the Hospital.

During the early months of 1988, each physician employed by GFA who was identified in the subagreement, including Dr. Gleicher, submitted an application to defendant for a faculty appointment. However, during the latter part of 1987 and the first half of 1988, while Dr. Gleicher's application for a faculty appointment was pending, disputes arose between defendant and Dr. Gleicher over several issues. Defendant objected to expenditures made by Dr. Gleicher to furnish and equip a proposed OB/GYN clinic on the campus, as well as the bidding of a contract to provide OB/GYN health care to Great Lakes Naval Hospital. In addition, one of GFA's employees, Dr. Alan Beer, decided to leave GFA's practice entirely and to associate himself on a full-time basis with UHS/CMS.

GFA filed a three-count complaint against defendant. Plaintiff alleged in counts I and II that Dr. Beer was unlawfully induced to breach his employment contract with GFA, and that defendant tor-

tiously interfered with GFA's employment contract with Dr. Beer. Count III, at issue in this appeal, alleged breach of an employment agreement with GFA and failure to provide faculty appointments to GFA's employees, including Dr. Gleicher.

Defendant filed a verified counterclaim, which included a count alleging tortious interference with the educational program between defendant and Dr. Beer. In count V of the counterclaim, defendant alleged that Dr. Gleicher tortiously interfered with the master agreement and the subagreement between defendant and the Hospital. Paragraph 13 of the counterclaim states:

"On December 31, 1987, a Sub-agreement for the Department of OB/GYN was entered into between Mt. Sinai Hospital Medical Center and the University of Health Sciences/The Chicago Medical School."

In that paragraph of the counterclaim, defendant also quotes a portion of the subagreement, which provides that the subagreement shall serve as a supplement and addendum to the master agreement of July 2, 1987, and that in the event of any conflicting provisions between the two agreements, the subagreement shall take precedence. In paragraphs 20 through 22 of count V, defendant sought damages for Dr. Gleicher's alleged tortious interference with the "Master Affiliation Agreement and Sub-Agreement with UHS/CMS." (Defendant, after changing counsel, later amended its counterclaim and omitted count V entirely.)

In July 1988, Dr. Marshall Falk, defendant's dean and executive vice-president, advised Ruth Rothstein, president of the Hospital, that because "Dr. Gleicher has persisted in his litigation against defendant," the faculty executive council, upon the recommendation of the chairman of the board of trustees, unanimously elected to withhold Dr. Gleicher's faculty appointment.

GFA filed a motion for partial summary judgment on count III and sought a mandatory injunction requiring defendant to appoint Dr. Gleicher to the UHS/CMS faculty. On May 21, 1990, the trial judge determined that by its own terms, the master agreement provided only a general statement of the terms and conditions of the affiliation and that departmental subagreements were incorporated by reference into the master agreement. The trial court found that the subagreement contained no ambiguous language, that the faculty appointments were a material consideration of the Hospital in the making of its master agreement, and GFA or its individual physician members identified in the subagreement were intended as third-party beneficiaries. Accordingly, the trial court granted partial summary judgment in fa-

vor of plaintiff and directed the parties to prepare the order. Defendant's cross-motion for summary judgment on the faculty appointment issue was denied.

Shortly thereafter, defendant engaged new counsel in connection with this litigation. Defendant then filed objections to the form of the proposed order submitted by plaintiff, and also a motion for reconsideration of the court's grant of summary judgment in plaintiff's favor. In its motions, defendant first argued that the subagreement was never fully executed by the parties because it was signed only by department heads of defendant and the Hospital, and did not include signatures of other representatives of those institutions. Defendant further claimed that the physicians' salaries had not been included in the subagreement, and that the "agreements" included not just the partially executed subagreement, but the course of conduct of the parties.

As support for its position, defendant submitted evidence, primarily in the form of affidavits which were executed subsequent to the entry of summary judgment. Dr. Marshall Falk stated in his affidavit that individual departments of UHS/CMS are not parties to the master agreement, and that department chairpersons are not authorized to enter into any agreement with the Hospital on behalf of defendant. Dr. Mitchell Rhodes, associate dean of UHS/CMS, indicated in his deposition that the authorized officers of defendant did not sign the subagreement because certain terms contained therein were not final and did not reflect the agreements reached by defendant and the Hospital. Rothstein stated in her affidavit that all subagreements were subject to her approval as chief executive officer of the Hospital, and that it was never her intention to permit a subagreement to supersede or take precedence over the master agreement.

On September 12, 1990, the court allowed defendant to file an amended answer and affirmative defenses; however, the judge cautioned that any conflict found with the original pleadings would not be deemed a clarification; rather, it would be considered a complete reversal of position and would not be regarded. During the pendency of those post-summary judgment motions, defendant also amended the master agreement to recite that no third-party beneficiary rights were created by the master agreement or any subagreements relating thereto, and that the terms of the master agreement in all events control over the terms of any subagreement.

On December 17, 1990, the trial court denied defendant's motion to reconsider the grant of summary judgment and awarded plaintiff a mandatory permanent injunction requiring defendant to appoint Dr.

Gleicher to the University's faculty effective *nunc pro tunc* to May 21, 1990. The order contained language that the court had considered the affidavits filed by defendant. The judge also ruled that the injunctive relief ordered on May 21, 1990, was not mooted by Dr. Gleicher's voluntary resignation as chairman of the OB/GYN department of the Hospital on September 15, 1990. This court and our supreme court denied defendant's motions to stay those orders of the trial court.

On February 21, 1991, defendant complied with the trial court's order of December 17, 1990, and appointed Dr. Gleicher to its faculty. At that time, defendant advised Dr. Gleicher that article 3:3 of the bylaws prohibited him from using defendant's name in connection with any commercial ventures without their approval, and that it would not grant approval to use the UHS/CMS name in connection with the publication of Dr. Gleicher's forthcoming book unless he also disclosed the circumstances and disputed nature of his appointment.

On March 29, 1991, plaintiff filed an emergency motion to supplement the December 17, 1990, injunction, in which it sought to prohibit defendant from enforcing article 3:3 of its bylaws against Dr. Gleicher or otherwise interfering with the publication of his book. In April 1991, the trial court granted plaintiff's motion for such further injunctive relief.

Initially, we note that the purpose of summary judgment is to determine whether there are any issues of genuine material fact. (*Kelman v. University of Chicago* (1988), 166 Ill. App. 3d 137, 519 N.E.2d 708.) An order granting summary judgment is appropriate where the pleadings, depositions on file, together with the affidavits, if any, demonstrate there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c).) Summary judgment is an appropriate procedure in construing the legal principles of a contract. *Village of Rosemont v. Lentin Lumber Co.* (1986), 144 Ill. App. 3d 651, 494 N.E.2d 592.

On appeal, defendant contends that the trial court's award of a mandatory, permanent injunction requiring defendant to appoint Dr. Gleicher to the faculty was improper because numerous issues of material fact exist which preclude granting summary judgment. Defendant asserts that the subagreement was incomplete on its face because it was never executed by representatives of the Hospital and UHS/CMS, and that the department chairmen who signed the subagreement, Drs. Freese and Gleicher, did not have the authority to bind their principals. Defendant states that the evidence presented to the trial court, in particular the affidavits of Rothstein and Drs. Falk and

Rhodes, demonstrated its lack of intent to bestow any third-party beneficiary rights upon GFA or Dr. Gleicher. Defendant also maintains that the conduct of GFA and its employees, including Dr. Gleicher, indicates that they did not have a contractual right to an automatic appointment to the UHS/CMS faculty, and that by its conduct, GFA released defendant from any obligation to perform.

We find, however, that defendant's recent claim that the subagreement was never executed contradicts prior admissions made by defendant. Specifically, we believe that the statements made by defendant in its verified counterclaim of December 19, 1988, constitute judicial admissions. As such, defendant is now precluded from denying the validity of the subagreement because count V of the verified counterclaim was premised upon the existence of the subagreement.

■ An admission in an answer constitutes a formal judicial admission and is conclusive upon the person making it. (*Board of Education of Township High School District No. 205 v. Faculty Association of District 205* (1983), 120 Ill. App. 3d 930, 458 N.E.2d 1017; *Long v. Arthur Rubloff & Co.* (1975), 27 Ill. App. 3d 1013, 327 N.E.2d 346; *Hastings v. Abernathy Taxi Association, Inc.* (1973), 16 Ill. App. 3d 671, 306 N.E.2d 498.) Once a statement of fact has been admitted in a party's pleadings, it is binding upon the party making it; therefore, it is unnecessary for the opposing party to introduce evidence in support thereof because it has the effect of withdrawing the fact from issue. *In re Estate of Muhammad* (1984), 123 Ill. App. 3d 756, 463 N.E.2d 732.

In *Board of Education v. Faculty Association*, the plaintiff school board filed an action seeking a declaration of inarbitrability for a labor grievance filed by the faculty association on behalf of a school nurse who had been terminated by the board. The school nurse was subsequently added as a party defendant and filed a counterclaim. In its answer to the counterclaim, the school board made an admission that the school nurse was a member of the faculty association at the time of her dismissal. This court held that the school board's specific admission could not be disclaimed because it was binding.

■ Section 2—608(b) of the Illinois Code of Civil Procedure provides that claims by a defendant against a plaintiff shall be designated as a counterclaim and included as part of the answer. It follows, therefore, that when defendant stated in paragraph 13 of the verified counterclaim that on December 31, 1987, a subagreement for the OB/GYN department was entered into between the Hospital and UHS/CMS, quoted a portion of that subagreement in its claim, and also

sought damages for Dr. Gleicher's tortious interference with the "Master Affiliation Agreement and Sub-Agreement with UHS/CMS," binding judicial admissions were made which cannot now be disclaimed. It is also notable that the counterclaim asserted that in case of any conflicting provisions, the subagreement would control.

Thus, defendant's subsequent attempts to deny the existence of the subagreement by asserting that it was never fully executed and by introducing affidavits are without merit in view of prior admissions set forth in the verified counterclaim. The trial judge properly cautioned defendant at the time it was allowed to file an amended answer and affirmative defense that any conflict with the original pleadings would not be deemed a clarification; rather, he would consider it a complete reversal of position and would disregard it. When a party makes admissions which are so "deliberate and unequivocal as to matters within its knowledge," those admissions will conclusively bind that party who cannot later contradict those admissions. (*Commonwealth Eastern Mortgage Co. v. Williams* (1987), 163 Ill. App. 3d 103, 516 N.E.2d 515.) We note, too, that the information contained in the affidavits cannot be characterized as "newly discovered," for each of these individuals was available throughout the course of this protracted litigation.

■ Defendant also argues that UHS/CMS, through its bylaws, was permitted discretion in administering faculty appointments. However, the master agreement clearly contemplated subsequent departmental subagreements. As we have established, the subagreement unequivocally granted Dr. Gleicher an appointment to the UHS/CMS faculty and takes precedence over any conflicting provisions found in the master agreement.

Similarly, defendant's argument that GFA and Dr. Gleicher were not intended third-party beneficiaries of the master agreement and did not have a contractual right to an automatic appointment to the UHS/CMS faculty is simply not borne out by a plain reading of the master agreement and subagreement. Contracts must be interpreted as a whole, and it is presumed that all provisions were inserted for a purpose. (*Village of Rosemont*, 144 Ill. App. 3d 651, 494 N.E.2d 592, citing *Bruno Benedetti & Sons, Inc. v. O'Malley* (1984), 124 Ill. App. 3d 500, 464 N.E.2d 292.) A court has a duty to harmonize the provisions of a contract (*In re Support of Halas* (1984), 104 Ill. 2d 83, 470 N.E.2d 960) and to avoid construction which renders some provisions meaningless. (*Lukasik v. Riddell, Inc.* (1983), 116 Ill. App. 3d 339, 347, 452 N.E.2d 55.) Upon review of the subagreement, we find that Dr. Gleicher was clearly intended to perform an integral role on the

UHS/CMS faculty, as set forth in the detailed description of his teaching and administrative responsibilities in the subagreement.

■ Finally, we are unpersuaded by defendant's argument that GFA's alleged breaches of the subagreement released defendant from any obligation to perform. As support for its contention, defendant refers to statements made in Dr. Falk's affidavit that Dr. Gleicher interfered in the residency program, thereby breaching a covenant of fair dealing and good faith implied into every contract. Defendant also relies upon the following statement found in a letter from Dr. Gleicher to defendant dated March 8, 1988:

"Should you and the school not be able to assure us of that minimum level of academic security, I would recommend that Mount Sinai look elsewhere to meet its needs and fulfill its interests."

When viewed in the context of the letter, in which Dr. Gleicher explicitly requests that defendant process academic appointments fairly and quickly, we cannot find that this assertion rises to the level of genuine material fact sufficient to defeat a motion for partial summary judgment. Similarly, we find no merit in defendant's argument that plaintiff breached covenants of fair dealing and good faith. Partial summary judgment may be granted whenever there is no material factual dispute as to any major issue in a case, even if substantial controversy exists with respect to other issues. Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(d); *Colt Construction & Development Co. v. North* (1988), 168 Ill. App. 3d 913, 523 N.E.2d 90, citing *Brewer v. Daubert Chemical Co.* (1979), 72 Ill. App. 3d 718, 391 N.E.2d 110.

We turn now to defendant's contention that the injunctive relief awarded to Dr. Gleicher was improper without an evidentiary hearing. Defendant argues that GFA failed to comply with section 2—604 of the Illinois Code of Civil Procedure because damages only were sought in its specific prayer for relief. Defendant further maintains that GFA submitted no evidence that Dr. Gleicher would suffer irreparable harm if the faculty appointment were not made.

Upon review of plaintiff's prayer for relief, we first note that GFA sought "such other and further relief as shall be just," in addition to the claim for damages. According to section 2—604, the prayer for relief does not limit the relief obtainable, but where other relief is sought the court shall protect the adverse party against prejudice by reason of surprise. In this case, it cannot be said that defendant would have been unduly surprised or prejudiced by Dr. Gleicher's faculty appointment.

 The purpose of a permanent injunction is to extend or maintain the status quo indefinitely after a hearing on the merits where it has been shown that the plaintiff is suffering irreparable harm and there is no adequate remedy at law. (*American National Bank & Trust Co. v. Carroll* (1984), 122 Ill. App. 3d 868, 462 N.E.2d 586.) The exhaustive briefs filed in this case, in conjunction with the arguments already heard by the trial court, belie defendant's assertion that further evidentiary hearings are necessary before permanent injunctive relief can be granted.

 More importantly, we find that the trial court properly granted GFA a permanent injunction requiring that Dr. Gleicher be appointed for a three-year faculty term as provided in the UHS/CMS bylaws. The publication of Dr. Gleicher's textbook would be adversely affected if he were unable to show that he was currently on staff at an academic institution, or that such appointment was the subject of controversy. Also, the potential break in Dr. Gleicher's curriculum *vitae* created by defendant's refusal to honor his faculty appointment poses a threat to his ability to procure other academic employment which cannot be rectified by the mere award of monetary damages.

 Defendant next asserts that the court improperly imposed a personal relationship upon feuding parties in contravention of established authority prohibiting the imposition of personal service contracts. Defendant further argues that courts should not interfere with the self-governance powers and the hiring process of an academic institution.

Under the circumstances of this case, however, we find that the court properly ordered the appointment of Dr. Gleicher to the UHS/CMS faculty. Defendant was not required to utilize Dr. Gleicher's services in a teaching or administrative capacity or provide a salary to him; rather, as previously discussed, the faculty appointment was necessary to prevent a break in Dr. Gleicher's curriculum *vitae*. In his affidavit dated November 29, 1990, Dr. Gleicher indicated that he anticipated receiving an appointment at another medical school within six months, at which time he would resign his position at UHS/CMS because of the custom in the Chicago medical community allowing physicians to be affiliated with only one medical school.

 Defendant also argues that Dr. Gleicher's voluntary resignation from his position on September 15, 1990, as the chairman of the Hospital's OB/GYN department makes the relief sought by GFA moot. This court has held that a dispute is moot "where no actual rights or interests of the parties remain or where events occur which render it impossible for the reviewing court to grant effectual relief to either

party." *Nameoki Township v. Cruse* (1987), 155 Ill. App. 3d 889, 895-96, 508 N.E.2d 1080.

Defendant contends that Dr. Gleicher's contractual right to a faculty appointment was in exchange for consideration in the form of his performance in his role as OB/GYN department chairman. However, we do not find that either the master agreement or the subagreement mandates that Dr. Gleicher continue as the chairman of the OB/GYN department in order to secure a faculty appointment. Review of the record also reveals that both parties stipulated that after his resignation, Dr. Gleicher retained his privileges and continued to treat some patients at the Hospital. The parties further stipulated that Dr. Gleicher will continue to be associated with the Hospital's teaching program to the extent that he (a) supervises residents in the course of treating his patients; or (b) communicates information to students who are present in the course of his treating his patients.

Absent an express contractual provision in either the master agreement or subagreement requiring Dr. Gleicher to maintain his position as department chairman, or in such other supervisory or administrative capacity, we conclude that Dr. Gleicher's resignation from the Hospital on September 15, 1990, does not render the relief sought moot. Although the parties' stipulation indicates that Dr. Gleicher is no longer department chairman, he has nevertheless retained his privileges at the Hospital and some association with the teaching program. Therefore, it remains within the court's authority to provide Dr. Gleicher with the relief sought, namely, the faculty appointment so that Dr. Gleicher's career is not irreparably damaged.

Defendant also argues that the trial court's award of a mandatory permanent injunction without an evidentiary hearing to resolve numerous disputed issues of fact deprived defendant of its constitutional right to due process. As we have previously discussed, the trial judge was adequately apprised of the issues in this case after reading the extensive briefs and motions of the parties. Moreover, numerous hearings were conducted by the court over the disputed issues. Further evidentiary hearings would be a waste of the court's resources and would serve no useful function.

Defendant's final argument posits that the trial court's orders of April 2, 1991, and April 12, 1991, which granted a permanent injunction allowing Dr. Gleicher to state that he is on the UHS/CMS faculty in his medical textbook, prohibited defendant from enforcing its bylaws. Specifically, article 3:3 of the UHS/CMS bylaws prohibits faculty members from using defendant's name to promote a commercial venture without its approval.

90

We find that the trial court properly enjoined defendant from interfering with the publication of Dr. Gleicher's textbook. We do not believe that Dr. Gleicher's mere statement that he is a member of the UHS/CMS faculty can properly be construed as a promotion of a product; rather, he is simply setting forth his credentials within the limited context of the textbook. As such, no palpable, substantial harm is directed toward defendant.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County granting partial summary judgment in favor of plaintiff on count III, and denying defendant's cross-motion.

Judgment affirmed.

RAKOWSKI, P.J., and EGAN, J., concur.