CONTINENTAL MOBILE TELEPHONE COMPANY, INC., Plaintiff-Appellant, v. CHICAGO S M S A LIMITED PARTNERSHIP *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—91—0436

Opinion filed February 7, 1992.—Rehearing denied March 3, 1992.

Nathan H. Dardick, Morton Denlow, and Michael D. Richman, all of Chicago, for appellant.

Paul P. Biebel, Jr., Jerome W. Pope, Thomas R. Bearrows, and Michael J. Stepek, all of Winston & Strawn, of Chicago, for appellees.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Continental Mobile Telephone Company, filed a six-count complaint in the circuit court of Cook County seeking a declaratory judgment, injunctive and other relief against defendants, Chicago S M S A Limited Partnership, and its general partner, Ameritech Mobile Phone Service of Chicago, Inc. (hereinafter defendant). The parties had entered into an agreement in which plaintiff purchased cellular telephone services from defendant at wholesale prices and offered those same services to retail customers. The trial court granted partial summary judgment in defendant's favor on count I, finding that defendant was not contractually bound to provide plaintiff with (1) a standard wholesale rate for defendant's corresponding retail rates or plans; (2) fixed standard wholesale rates; and (3) 30 days' advance notice of retail rate revisions. The remaining counts, alleging breach of implied duty of good faith and fair dealing, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1989, ch. 121½, par. 261 et seq.), tortious interference with contract and prospective business advantage, unfair competition, and a request for declaratory judgment on the pricing discount were dismissed by the trial court for failure to state a cause of action. Plaintiff appeals from the award of partial summary judgment as to count I and the dismissal of the other counts, except the count alleging unfair competition.

We adduce the following factual background from the affidavits, pleadings, and documents filed. Defendant operates a cellular telephone transmission system in the Chicago area, selling mobile telephone service to both retail and wholesale customers. In 1981, the Federal Communications Commission awarded two competing licenses to provide cellular radio service to defendant and another cellular company. In effect, a legal duopoly was created that required the two entities to provide cellular transmission capacity to resellers on a nondiscriminatory basis, and under the same terms and conditions as its own retail distribution arm.

In 1984, plaintiff commenced operations as an independent reseller of cellular telephone service to its own retail customers in the

Chicago metropolitan area. At the time plaintiff began to compete as a reseller, the rates charged by defendant were regulated by tariffs approved by the Illinois Commerce Commission (ICC). The tariffs provided resellers with a discount of 23.5% from the retail rate. In February 1987, the ICC granted defendant's petition to exclude cellular radio service from the applicable tariffs and from active regulatory oversight. Defendant continued to provide wholesalers with a discount of 23.5% below the retail rate.

In the spring and summer of 1989, defendant began offering programs to individuals who were members of common interest groups such as realtors, printers, and small business association members at a 20% discount from defendant's standard retail rate. Plaintiff informed defendant that its ability to compete was materially damaged as a result of the implementation of these programs. Consequently, the parties decided to enter into a formalized agreement in an attempt to resolve the dispute.

The parties engaged in contract negotiations from August through October 1989. The principal parties involved in the negotiations on behalf of plaintiff were its president, Ronald Goldberg, and its vice-president, Philip Leavitt. Martin Johanson, director of wholesale and corporate accounts, negotiated on behalf of defendant.

Goldberg stated in his affidavit that he voiced his concern at the contract negotiations about plaintiff's ability to compete on a fair and equitable basis for retail customers. Plaintiff could not fairly compete with defendant for consumers being offered association plans, since no standard wholesale margin was being provided to it for such plans. During the negotiations, Johanson repeatedly assured Goldberg that defendant had ceased offering association plans to additional retail customers. At a meeting held on December 1, 1989, defendant's president, Bruce DeMaeyer, stated that: "As long as I am president of [defendant corporation] there will be no more association deals." Plaintiff also advised defendant that it was essential that standard wholesale rates be provided for every retail rate and plan offered by defendant.

On October 16, 1989, plaintiff and defendant executed a customer sales agreement drafted by defendant. Paragraph 14 of the agreement provides in relevant part:

> "14. *Rates and Charges.* The Customer agrees to pay the Company for Service used by the Customer and/or any Authorized User at the rates and charges specified in the Company's Schedule of Rates and Charges then in effect. (The Schedule of Rates and Charges in effect at the date of this Agreement is

attached as Exhibit A). *The Company, at its sole discretion and at any time, reserves the right to revise its rates and charges. The Company shall provide thirty (30) days' notice to the Customer of the effective date of any revision.* After any such effective date, the Customer must pay the revised rates and charges unless and until the Customer terminates this Agreement in accordance with the provisions of Paragraph 9, above." (Emphasis added.)

The agreement contained an integration clause which stated that the agreement expressed the entire agreement between the parties, and superseded all prior discussion and agreements. In the event of any conflict, the provisions found in the agreement will control.

A pricing schedule was also included in the agreement, which codified all existing rates and charges in effect as of October 16, 1989. The schedule offered two pricing options. Under option A, plaintiff was required to pay defendant at standard wholesale rates for several corresponding retail plans in effect at that time. Option B provided a committed-growth incentive pricing plan that permitted plaintiff to make a three-year growth commitment in order to earn discounts ranging from 23.5% to 30% below defendant's average retail rates. Plaintiff elected to participate in option B pricing. Goldberg stated in his affidavit that the wholesale rate charged by defendant has traditionally been 23.5% lower than the retail rate for the same cellular air time that defendant charges directly to the general public through its authorized agents, retailers or corporate sales divisions.

On March 14, 1990, defendant gave plaintiff notice that effective April 24, 1990, it would be implementing price restructuring for both retail and wholesale plans in the Chicago/northwest Indiana market.

On May 24, 1990, defendant notified all Chicago resellers, including plaintiff, that effective immediately, defendant was revising its rates and charges to its retail customers. Those revisions included the introduction of a new retail rate called the "Business Plan," which was available only to customers subscribing to 10 or more mobile telephone lines. Defendant did not offer resellers a new wholesale "Business Plan" rate. According to Goldberg, plaintiff also lost numerous Chicago Mercantile Exchange customers after defendant offered retail rates at a price less than plaintiff's wholesale cost.

During the course of the agreement, plaintiff operated under the pricing provisions of option B. Plaintiff initially committed to a net line growth of 300 lines per quarter, and received a discount margin of 30%. On May 2, 1990, defendant notified plaintiff that because of decreases in its performance level, defendant had recomputed the

monthly service rates for its reseller program. Plaintiff requested back-up information to support defendant's recomputation. On May 25, 1990, defendant's in-house counsel notified plaintiff that in order to meet its committed growth level and to earn the Level 3 discount of 30% during that period, plaintiff would have had to achieve 600 net line activations. Because plaintiff actually achieved a negative net activation of 211 lines, it qualified only for the standard reseller discount of 23.5%.

The trial court found that the language contained in paragraph 14 was plain and unambiguous, and allowed defendant the option to alter its rates and charges, including the discount rate. The trial court characterized the 23.5% discounts previously given to plaintiff as a "matter basically of coincidence," and merely a historical fact before the contract. Accordingly, the court granted defendant's motion for partial summary judgment on count I. The remainder of plaintiff's counts were later dismissed for failure to state a cause of action.

On appeal, plaintiff first contends that the trial court erred in granting summary judgment on count I. Specifically, plaintiff claims that pursuant to paragraph 14 of the agreement, defendant should be required to provide plaintiff with a standard wholesale rate for each corresponding retail rate or plan offered by defendant, 30 days' advance notice of retail rate revisions, and that plaintiff is entitled to a standard wholesale rate of no less than 23.5% off defendant's corresponding retail rates and plans. (Defendant does not cross-appeal and does not object to the trial court's finding that it breached the notice provisions when it failed to provide 30 days' advance notice of the May 24, 1990, wholesale rate revisions.)

The purpose of summary judgment is to determine whether there are any issues of genuine material fact. (*Kelman v. University of Chicago* (1988), 166 Ill. App. 3d 137, 519 N.E.2d 708.) An order granting summary judgment is appropriate where the pleadings and depositions on file, together with the affidavits, if any, demonstrate there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c).) Construing a contract is a matter of law suitable for summary judgment. *Srivastava v. Russell's Barbecue, Inc.* (1988), 168 Ill. App. 3d 726, 523 N.E.2d 30.

It is well settled under Illinois law that a contract is considered ambiguous when its terms can reasonably be interpreted in more than one way. (*J.M. Beals Enterprises, Inc. v. Industrial Hard Chrome, Ltd.* (1990), 194 Ill. App. 3d 744, 551 N.E.2d 340; *In re Estate of Chaitlen* (1989), 179 Ill. App. 3d 287, 534 N.E.2d 482; *Lenzi v.*

*Morkin* (1983), 116 Ill. App. 3d 1014, 452 N.E.2d 667.) However, when the contract terms are clear and unambiguous, the intent of the parties must be discerned only from the language used in the contract itself. (*Village of Grandview v. City of Springfield* (1984), 122 Ill. App. 3d 794, 461 N.E.2d 1031.) Language in a contract is not rendered ambiguous simply because parties do not agree upon its meaning. (*Reynolds v. Coleman* (1988), 173 Ill. App. 3d 585, 527 N.E.2d 897.) When contract terms are clear and unambiguous, they must be given their ordinary and natural meaning. *Susmano v. Associated Internists of Chicago, Ltd.* (1981), 97 Ill. App. 3d 215, 422 N.E.2d 879.

■ Applying these principles to this case, we find that the trial court properly concluded that the language contained in paragraph 14 is clear and unambiguous and allows defendant to revise its wholesale rates and charges at its sole discretion. We are unpersuaded by plaintiff's argument that any reference to rates and charges requires defendant to provide notice of its retail rate revisions, for the essence of this agreement concerns the rates and charges plaintiff must pay as a reseller of cellular services. Paragraph 14 makes explicit reference to the schedule of rates and charges attached as exhibit A to the contract, which are, of course, wholesale rates. Further, we find the contract devoid of any terminology that would require a defendant to provide a standard wholesale rate for corresponding retail rates such as the newly introduced "Business Plan," or that plaintiff was entitled to a discount rate of no less than 23.5% off defendant's corresponding retail rates and plan. Finally, the integration provision contained in the contract indicates that the parties intended this agreement to be their final expression, and superseded all prior discussions and agreements between the parties.

Moreover, we note that in order to accommodate plaintiff's contentions contained in count I, it would require that we remake the contract to provide a better bargain than plaintiff had already made. It is well established that a court may not rewrite a contract to suit one of the parties, and that when the terms are clear and unambiguous, they must be enforced as written. (*Michigan Avenue National Bank v. Evans, Inc.* (1988), 176 Ill. App. 3d 1047, 531 N.E.2d 872; *A.A. Conte, Inc. v. Campbell-Lowrie-Lautermilch Corp.* (1985), 132 Ill. App. 3d 325, 477 N.E.2d 30.) In this case, defendant was clearly afforded the discretion to revise its wholesale rates at any time. We conclude, therefore, that partial summary judgment was properly granted on count I.

We move now to plaintiff's assertion that the trial court improperly dismissed counts II through VI for failure to state a cause of

action. Under section 2—615 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—615), a party may move for dismissal of an action where the pleadings fail to state a cause of action. A cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle the plaintiff to recover. *Michael Reese Hospital & Medical Center v. Chicago HMO, Ltd.* (1990), 196 Ill. App. 3d 832, 554 N.E.2d 472.

■ Plaintiff first maintains that the trial court erred in dismissing count V of plaintiff's complaint based on the implied duty of good faith and fair dealing. In support of its claim, plaintiff essentially reiterates its earlier assertions that defendant's refusal to offer it a standard wholesale rate when implementing the "Business Plan" and other retail rates breached its implied good-faith duties under the agreement.

In view of the fact that the contract terminology allowed defendant to raise its rates at its sole discretion and at any time, we do not believe that plaintiff has stated a cause of action under the implied duty of good faith and fair dealing. Good faith between contracting parties requires that a party vested with contractual discretion must exercise that discretion reasonably, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties. (*First National Bank v. Sylvester* (1990), 196 Ill. App. 3d 902, 554 N.E.2d 1063, citing *Carrico v. Delp* (1986), 141 Ill. App. 3d 684, 490 N.E.2d 972.) In this case, both parties were aware that defendant was able to raise its wholesale rates at any time, thereby negating any inference that defendant's actions were outside the contemplation of the parties and could be characterized as a breach of good faith.

■ Plaintiff next contends that it properly stated a cause of action in count IV based upon the Consumer Fraud and Deceptive Business Practices Act (Act or Consumer Fraud Act) (Ill. Rev. Stat. 1989, ch. 121½, par. 261 *et seq.*). The trial court found the Act did not apply under the circumstances because plaintiff was alleging only an isolated breach of contract. In addition, the court found that under section 10b(l) of the Consumer Fraud Act, the ICC retained "passive jurisdiction" to regulate defendant's conduct. That section provides in relevant part:

"§10b. Nothing in this Act shall apply to:

(1) Actions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." Ill. Rev. Stat. 1989, ch. 121½, par. 270b(1).

We agree with the trial court's conclusion that section 10b(1) precludes our review of this claim. The rates for cellular service, as part of the telecommunications sector, are subject to continuous monitoring by the ICC. Indeed, the record reveals that in March 1991, plaintiff filed a complaint with the ICC charging that the same conduct alleged in this case constituted unfair and anticompetitive practices in pricing.

■ Plaintiff also maintains that it properly pled a cause of action in count II for tortious interference with contracts and prospective advantage. The essential elements of both of these torts are similar in their requirements: (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) defendant's awareness of this contractual relation; (3) defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages. (*Scheduling Corporation of America v. Massello* (1983), 119 Ill. App. 3d 355, 456 N.E.2d 298.) The acts that form the basis of tortious interference must be directed at parties other than the plaintiff. *IK Corp v. One Financial Place Partnership* (1990), 200 Ill. App. 3d 802, 558 N.E.2d 161; *Mitchell v. Weiger* (1980), 87 Ill. App. 3d 302, 409 N.E.2d 38.

■ It is undisputed that defendant failed to render notice of the May 24, 1990, wholesale rate revision. However, that conduct was not directed at any third party; rather, it was directed only at the plaintiff. As such, plaintiff has failed to meet the requisite elements of tortious interference. Moreover, plaintiff's assertion that defendant's solicitation of plaintiff's retail customers under the "Business Plan" without giving plaintiff advance notice of that rate constitutes tortious interference fails in view of our previous discussion that defendant was not contractually obligated to render advance notice of retail rate revisions. In addition, we note that plaintiff was aware from the onset of this relationship that defendant sold mobile telephone service to both retail and wholesale customers.

■ Finally, plaintiff contends that the trial court erred in dismissing count VI, which sought a declaration that because of defendant's failure to provide advance notice of the May 24, 1990, wholesale rate revision, it was unable to achieve the net line growth under option B which would have entitled it to a 30% discount, rather than the 23.5% standard wholesale rate.

In its first amended complaint, plaintiff claims that on May 2, 1990, prior to the date of the alleged breach by plaintiff, defendant advised that it had recomputed the monthly service rates upwards

and billed plaintiff accordingly. Defendant's failure to provide advance notice of the wholesale rate revision occurred on May 24, 1990; therefore, we find that any decrease in plaintiff's discount rate under option B is not attributable to the dispute at hand and was properly dismissed by the court.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

EGAN, P.J., and RAKOWSKI, J., concur.