## APOLLO TRAVEL SERVICES PARTNERSHIP, Plaintiff,

v.

## SPAIN TRAVEL, INC., etc., et al., Defendants.

### No. 98 C 1375.

United States District Court, N.D. Illinois, Eastern Division.

Jan. 26, 1999.

C. Vincent Maloney, Theodore C. Jennings, Altheimer & Gray, Chicago, IL, for plaintiff.

Joseph B. Carr, Lynda Battiste, McClung, Peters & Simon, Albany, NY, for defendants.

*MEMORANDUM OPINION
AND ORDER*

SHADUR, Senior District Judge.

Apollo Galileo USA Partnership ("Apollo"), a nationwide purveyor of its reservations and

---

ticketing services for airline flights, hotels and rental cars (as well as other travel-related services), has brought a breach of contract claim against one of its customer subscribers—Spain Travel, Inc. ("Spain")—asserting a whole set of violations of Subscriber Services Contract No. 166114 ("Agreement") between the parties, all stemming from Spain's assertedly premature termination of the Agreement. After the parties had jointly submitted a proposed Final Pretrial Order ("FPTO") that this Court then entered on December 8, 1998 (nunc pro tunc December 7), Apollo filed a motion in limine to head off an anticipated defense that Spain had telegraphed in the FPTO: the argument that the termination was justified—that Apollo had not lived up to the asserted promise by its representatives, during the course of negotiating the Agreement, that it would give Spain 12 airline tickets each year (literally give them, without any payment at all) throughout the course of the Agreement.

Apollo's motion in limine seeks to exclude the introduction of any evidence relating to that purported promise, and Spain has put the matter in issue by filing a memorandum in opposition. For the reasons set forth in this memorandum opinion and order, Apollo's motion is granted.

This problem reads much like an exam question in a first year law school class in contracts. To begin with, Agreement Art. 24 specifies (among other things) that Illinois' substantive law is to govern the resolution of "any dispute arising under or in connection with this Agreement."[1] And as uniformly taught in such cases as *Baxter Healthcare Corp. v. O.R. Concepts, Inc.,* 69 F.3d 785, 790–91 (7th Cir.1995):

> As this Court stated in *Sunstream Jet Exp. v. International Air Serv. Co.,* 734 F.2d 1258 (7th Cir.1984), the general rule in Illinois is that "if the contract imports on its face to be a complete expression of the whole agreement, it is presumed that the parties introduced into it every material term, and parol evidence cannot be ad-

mitted to add another term to the agreement." *Id.* at 1265 (quoting *Pecora v. Szabo,* 94 Ill.App.3d 57, 49 Ill.Dec. 577, 581–82, 418 N.E.2d 431, 435–436 (1981)); See also *Continental Mobile Tele. v. Chicago SMSA,* 225 Ill.App.3d 317, 167 Ill.Dec. 554, 558, 587 N.E.2d 1169, 1173 (1992) ("The integration provision contained in the contract indicates that the parties intended this agreement to be their final expression, and superseded all prior discussions and agreements between the parties.").

Agreement Art. 28A contains just such an integration provision (as did the agreement in *Baxter* ):

> This Agreement constitutes the entire agreement and understanding of the parties on the subject matter hereof and, as of the effective date, supercedes [sic] all prior agreements, whether written or oral, between the parties hereto concerning the subject matter hereof, excluding amounts due ATS [Apollo] which may have accrued under a prior agreement between the parties.

■ Here the Agreement and its numerous attachments and riders may be searched in vain for any promise by Apollo to provide Spain with airline tickets gratis. That being so, the familiar parol evidence rule—codified as between the parties by Agreement Art. 28A—normally calls for the exclusion of any evidence of such an oral promise. In an effort to escape that result, Spain seeks to invoke an exception to the parol evidence rule that exists where the provisions of the parties' written contract—despite an integration clause—are ambiguous. As *Farm Credit Bank v. Whitlock,* 144 Ill.2d 440, 447, 163 Ill.Dec. 510, 581 N.E.2d 664, 667 (1991) (citations omitted) explains that concept:

> A contract will be considered ambiguous if it is capable of being understood in more sense [sic] than one. Where a court determines that a contract is ambiguous, its construction is then a question of fact, and

**1.** In light of Apollo's Illinois home base, there is no doubt that Illinois choice-of-law principles (which control in this diversity action under *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)

and its progeny) would honor that contractual provision. But even were that not the case, the universality of the contract principles at issue here would preclude any change in the analysis.

parol evidence is admissible to explain and ascertain what the parties intended.

■ Although the Agreement is silent as to any claimed promise by Apollo to deliver plane tickets, one of the riders to the Agreement does contain a reference to "incentives" without defining that term, and Spain Mem. 1 argues that the airline tickets were intended to fall within that provision. On that score Apollo Reservations and Ticketing Service Rider ("Rider") is one of the added documents that are expressly made a part of the Agreement, and its Art. 8.F.(i) states:

> ATS and Subscriber [Spain] acknowledge that all charges, credits, discounts, incentives, assistance, and the like (collectively, "incentives") provided to Subscriber under the Agreement have been established at a level which reflects the expectation that Subscriber shall make substantial use of Apollo Services during the entire term of the Agreement.

But it takes only a moment's thought to see just how empty that contention by Spain really is. Indeed, the very fact that the Agreement and various of its riders are standardized in nature and were obviously drafted (at least in the first place) by Apollo for mass consumption[2]—the type of situation that frequently triggers application of the contra proferentem doctrine to cause any ambiguities to be resolved against the party

that drafted the document—actually cuts against Spain (the non-drafter) in this instance. Just the way in which the provision is written—with "incentives" being used not only as the collective term encompassing all the others, but also in the unusual fashion of standing as a shorthand substitute for itself as well as for the other words embraced within the collective term—tells us that the word is being used in the generic sense, rather than as a term of art that conveys some content that necessarily differs from that of those other words. After all, how but in that nonliteral generic sense can a "charge" that must be paid *by* Spain *to* Apollo[3] be characterized as an "incentive" to Spain?[4]

It is simply unpersuasive for Spain to point to the use of "incentives" in the quoted Art. 8.F.(i), while nothing is specifically labeled by that name elsewhere in the Agreement, as supporting the notion that a wholly unmentioned benefit to Spain (the delivery of 12 free tickets each year) somehow survived as enforceable in the face of the integration paragraph's prohibition against any such survival.[5] And that is doubly so when the economic value of the claimed promise that is so mysteriously omitted from the parties' highly detailed documentation would obviously be a reasonably material part of their deal.[6] Indeed, Spain has itself helped to torpedo its own argument that "incentives" represents a

---

2. Note not only the multi-digit number affixed to the Agreement and to its various adjuncts (Contract No. 166114–000) but also the "Product Designator" (photocopy attached) that identifies which of the numerous Apollo services are and which are not part of the entire package. And observe as well the standardized numbering of the various components at the lower left of each page (just as the Product Designator is identified there as "ATS 6201 04/95," the Agreement itself is "ATS 6000 04/94," the rider referred to in the text is "ATS 6001 06/95," and so on).

3. "Charge," unlike the other words in the laundry list in Art. 8.F.(i) of the Rider, is already defined that way in the Definitions Article of the Agreement itself—its Art. 1.D. And charges—which are financial obligations running from Spain to Apollo—are certainly the most pervasive single component of the numerous riders and attachments to the Agreement.

4. It is irrelevant that others of the listed words may fit more naturally into the normal English meaning of "incentives" and are also found elsewhere in other attachments to the Agreement—

for example, the financial assistance arrangements and bonus structure contained in the Apollo Financial Assistance Attachment or the credits granted in the Productivity Attachment. For Spain's tenuous argument to have any force at all, *each* of the listed words would have to constitute an "incentive" in the normal sense without actually being labeled as such.

5. Under Spain's approach, the Rider's inclusion of the "and the like" catchall as the final term included within the collective "incentives" would logically open up the parties to an endless number of alleged oral promises on which the Agreement and its adjuncts were wholly silent, thus rendering the integration clause totally without content or meaning.

6. If anything, Spain's position is weakened further by its assertion in FPTO Sch. B(3), Defendant's Statement of Contested Issues of Fact and Law, that an earlier (May 4, 1995) proposal by an Apollo representative as to possible aspects of the parties' deal—a proposal made more than two months before the Agreement was signed in

stand-alone term distinct from the other listed terms by its having joined with Apollo in twice employing, as part of the FPTO Stipulation of Uncontested Facts (FPTO Sch. A, ¶¶ 10 and 22, emphasis added), a common-usage treatment of "incentive" as being synonymous with another of the Rider's listed terms, "financial assistance":

10. The contract covering the period of July 1, 1994 through October 31, 1997 provided that Spain's bookings determined whether or not it received *financial assistance payments* during the term of the contract. Annual *incentive payments* were to be made if Spain obtained a pre-established number of bookings during the contract year. Spain was to receive a lump-sum for achieving its goal ("Annual FA"), as follows:

| Payment Date | Annual FA | Apollo Net Bookings |
| --- | --- | --- |
| 11/01/94 | $25,000.00 | 70,000 |
| 11/01/95 | $25,000.00 | 74,000 |

22. Under the Agreement, Spain's bookings were also calculated to determine whether or not it would receive *financial assistance payments* during the term of the Agreement. Annual *incentive payments* were to be made if Spain obtained a pre-established number of bookings during the contract year. Spain was to receive a lump-sum payment for achieving its goal plus additional *financial assistance* ("Bonus FA") for each booking made in excess of the specified threshold. Spain's *financial assistance* plan under the Agreement is set forth below.

| Payment Date | Annual FA | Apollo Bookings | Bonus FA |
| --- | --- | --- | --- |
| 07/01/96 | $25,000 | 70,000 | $0.10 |
| 07/01/97 | $25,000 | 72,000 | $0.10 |
| 07/01/98 | $25,000 | 72,800 | $0.10 |
| 07/01/99 | $25,000 | 74,000 | $0.10 |

In sum, nothing about the use of the term "incentives" where it is found in the Rider creates any ambiguity in the Agreement's total documentation, let alone an ambiguity that would open the door to such a major unmentioned benefit to Spain—particularly when so many minutiae of their contractual arrangements *are* spelled out in detail in that documentation. Instead the equally-spelled-out integration provision of Agreement Art. 28A will be given its full force. And that being so, any parol evidence regarding the claimed free airline tickets or any other "incentives" that were not specifically listed in the Agreement will be inadmissible. Apollo's motion to exclude such evidence is granted.

mid-July 1995 following intervening discussions and negotiations—had included this response to a Spain request for "Airline Tickets 12/year U.S. and UA":

12 United tickets/year for term of agreement. Possible contract terms that are discussed by parties in the course of their negotiations, but that are then omitted entirely from the parties' ultimate detailed formal contract, present the paradigmatic example of the operation of an integration clause and of the parol evidence rule to bar enforcement of any claimed promise regarding those possible terms.

■■■■■■

CONTRACT NO. 166114-000

AMEX SPAIN TRAVEL, INC. (171)
ATTEN: JAMES BRODIE
23 COMPUTER DRIVE EAST
ALBANY, NY 12205

### SUBSCRIBER SERVICES AGREEMENT
### PRODUCT DESIGNATOR

Each of the undersigned parties acknowledges that it has read, understands, agrees to be bound by the Agreement, Riders and Attachments selected by the mark(s) below and included herewith and that this Product Designator, the Agreement, and selected Riders and Attachments comprise the entire agreement between the undersigned parties regarding the subject matter hereof. Reproduction by reliable means of this Product Designator and the Agreement, Riders and Attachments selected shall be considered originals of such documents.

_X_ SUBSCRIBER SERVICES AGREEMENT

    _X_ Attachment A(s)
    _X_ Attachment B - Term of Agreement
    _X_ Attachment C - Productivity Attachment
    ___ _____
    ___ _____

_X_ Apollo Reservations and Ticketing Service Rider
    _X_ IBM End User License
    _X_ Microsoft License
    _X_ Artisoft Software License and Warranty
    _X_ VARIABLES C_____
    _X_ MOVE-CUSTOM_____
    _X_ APOLLO FA-CUSTOM_____
    _X_ CAS ATTACHMENT_____
    ___ _____
    ___ _____

___ Satellite Ticket Printer Rider
    ___ _____
    ___ _____

_X_ TS2000 Software License Rider (Monthly Lease)
    _X_ TS2000 General Ledger Sublicense
    ___ _____
    ___ _____

___ TS2000 Software License Rider (One-Time Fee)
    ___ TS2000 General Ledger Sublicense
    ___ _____
    ___ _____
    ___ _____
    ___ _____

SUBSCRIBER

By _____
Name _____ J. BRODIE
Title _____ President
Date _____ 7-13-95

APOLLO TRAVEL SERVICES PARTNERSHIP

By _____
Name _____ E. ROSS
Title _____ JUL 1 9 1995
Date _____ S.C. KADESH

### ATS INTERNAL USE ONLY

___ NONE
_X_ Contract No. 163043_____    _X_ All Locations OR  Only Pseudos _____
___ Contract No. _____    ___ All Locations OR  Only Pseudos _____
___ Contract No. _____    ___ All Locations OR  Only Pseudos _____