RURAL ELECTRIC CONVENIENCE COOPERATIVE COMPANY, Plaintiff-Appellant, v. SOYLAND POWER COOPERATIVE, INC., Defendant-Appellee.

Fourth District   No. 4—92—0392

Opinion filed December 23, 1992.—Rehearing denied February 10, 1993.

Frank K. Heap, John W. Rotunno, and Daniel Lawler, all of Bell, Boyd & Lloyd, of Chicago, for appellant.

A. James Shafter and James E. Peckert, both of Kehart, Shafter, Hughes & Webber, P.C., of Decatur, for appellee.

JUSTICE GREEN delivered the opinion of the court:

On June 15, 1989, plaintiff Rural Electric Convenience Cooperative (RECC), an Illinois not-for-profit corporation, filed a four-count complaint in the circuit court of Macon County against Soyland Power Cooperative, Inc. (Soyland), the same type of corporation. The complaint explained that Western Illinois Power Cooperative, Inc. (WIPCO), of which RECC was a member, had merged with Soyland, and RECC claimed entitlement to relief from the effects of the merger. Soyland filed a motion to dismiss maintaining the complaint failed to state a cause of action and, in any event, was defeated by affirmative matter showing the lack of joining an indispensable party. After a hearing, the court entered an order on April 14, 1992, allowing the motion to dismiss and denying RECC leave to amend. RECC appeals. We affirm.

Before designating separate counts, the complaint made allegations applicable to all counts which stated that (1) RECC is a not-for-profit electrical distribution cooperative operating in Illinois within the meaning of section 3.4 of the Electric Supplier Act (Act) (Ill. Rev.

Stat. 1989, ch. 111²/₃, par. 403.4); (2) RECC purchases electricity for distribution to approximately 4,000 ratepayers; (3) on January 7, 1963, RECC, then a member of WIPCO, entered into a contract to purchase all of its electricity from WIPCO; (4) Soyland was also an electrical distribution cooperative within the meaning of section 3.4 of the Act; (5) effective March 23, 1989, a merger between WIPCO and Soyland took effect; and (6) RECC voted against the merger.

■ The major thrust of count I of the complaint is RECC's request to require Soyland to purchase RECC's interest in WIPCO as provided in section 9 of the Merger of Not For Profit Corporations Act (Merger Act), which provides in part:

"Any member of or owner of a unit of interest in any merging or consolidating corporation, * * * objecting to the merger or consolidation with another corporation * * * shall be obligated to sell and transfer to the acquiring corporation and the acquiring corporation shall become and be obligated to purchase such memberships or other evidences of ownership of interest, together with all rights and interest thereby represented, * * * at a price equal to the fair value of such units of interest * * *." (Ill. Rev. Stat. 1991, ch. 32, par. 188i.)

Count I also alleged that under WIPCO's articles of incorporation and bylaws, upon RECC's cessation of membership in WIPCO, RECC's contractual obligation to purchase power would be terminated.

Counts II, III, and IV sought a judgment declaring that a merger freed RECC from its obligations under the 1967 contract, as extended, by which RECC had purchased power from WIPCO. The counts also alleged that RECC had lent large sums of money to WIPCO and requested that Soyland reimburse RECC for all sums it had advanced after deducting costs incurred in furnishing electricity to RECC. The counts contended the duties owed RECC by WIPCO could not be assigned or delegated by WIPCO to Soyland because (1) a confidential relationship between WIPCO and RECC arose because of the large debt and a contract provision permitting WIPCO to set the charges for electricity (count II); (2) section 2—210(1) of the Uniform Commercial Code (Code) (Ill. Rev. Stat. 1991, ch. 26, par. 2—210(1)) prohibited the delegation of duties of performance of sales contracts (count III); and (3) the change in the makeup of the governing board of the merged corporation from that of WIPCO (with which RECC contracted to deal) made a requirement for RECC to continue with the contract unfair (count IV).

The affirmative matter set forth in Soyland's motion to dismiss consisted of an undisputed verified statement of Soyland's general

manager that (1) in exchange for funds obtained from the Rural Electrification Administration (REA), a Federal agency, by RECC and Soyland substantially all of the assets of those cooperatives have been pledged as security to REA; and (2) the pledge included the right of Soyland to receive payments from RECC for electricity furnished under the 1963 contract between RECC and WIPCO. The amendment to the complaint which RECC sought to make when the court dismissed its original complaint would have added an additional count seeking an accounting.

The question of whether the complaint stated any cause of action is very complicated. However, we conclude no cause of action was set forth. We construe the statutory scheme concerning not-for-profit corporations to which RECC, WIPCO and Soyland were subject at the time of the merger excluded them from the provisions of section 9 of the Merger Act. Thus, Soyland was not required to purchase RECC's interest in WIPCO and allow it to cease its membership in the merged corporation. We further hold that because of the special relationship of the three cooperatives involved, their bylaws, and the 1963 contract for purchase of power, rules otherwise possibly prohibiting the delegation of some duties under the 1963 contract were not applicable here. RECC did not state a cause of action for relief from various duties under that contract being delegated to Soyland.

■ RECC's proposed amended complaint did not make material changes in its first four counts. Thus, it did not correct the weaknesses in the original complaint. Count V, the count proposed to be added, requested an accounting but did not show how legal remedies would be inadequate for RECC to obtain any monies owed it by Soyland. Accordingly, the circuit court did not breach its discretion in denying leave to amend. (*Taylor v. City of Beardstown* (1986), 142 Ill. App. 3d 584, 591, 491 N.E.2d 803, 808.) Soyland contended that REA was a necessary party to the proceedings in order to protect its security interest in regard to the loans it had made to the parties. As we are affirming the judgment of the circuit court, we need not decide this question.

The question of whether count I states a cause of action turns upon the effect of section 10a of the Merger Act, which, prior to the enactment of the General Not For Profit Corporation Act of 1986 (1986 Act) (Ill. Rev. Stat. 1989, ch. 32, par. 101.01 *et seq.*), stated:

> "The provisions of this Act *shall not be applicable to corporations which are subject to the provisions of* 'An Act to revise the law relating to corporations not for pecuniary profit' [(the

1943 Act)], enacted by the Sixty-third General Assembly." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 32, par. 188j—1.)

The parties agree that both Soyland and WIPCO were organized under and governed by the General Not for Profit Corporation Act of 1943 (1943 Act) (see Ill. Rev. Stat. 1943, ch. 32, par. 163a *et seq.*), but that the 1943 Act was repealed by the 1986 Act, and that after January 1, 1987, Soyland and WIPCO have been "subject to the provisions" of the 1986 Act rather than the "provisions" of the 1943 Act.

In dismissing count I, the circuit court noted that the General Assembly enacted section 10a of the Merger Act at the same time the 1943 Act was enacted. The court deemed this action a clear indication by the General Assembly that entities such as Soyland, WIPCO, and RECC should not be subject to the Merger Act and that this policy persists. That court concluded that when the General Assembly repealed the 1943 Act by the enactment of the 1986 Act, the failure to amend section 10a of the Merger Act to cover corporations subject to the 1986 Act was merely legislative oversight. We agree with that analysis.

RECC maintains, on the other hand, that because section 10a of the Merger Act purports on its face to exempt only corporations subject to the 1943 Act, and none of the electrical cooperatives involved here are now subject to the repealed 1943 Act, none are exempt from the provisions of section 9 of the Merger Act. That certainly is the correct interpretation to be given to the statutory scheme involved if literal interpretation is to be given to the provisions of section 10a of the Merger Act. In support of its theory, RECC recites the following holding of the supreme court:

> "[T]hat where a later statute does not entirely abrogate a former act, but merely withdraws from the operation of the earlier act a portion of the cases included within its terms, leaving the earlier act still in force except as to the cases specifically provided in the latter act, under such circumstances the repeal of the later act has the effect of again bringing the cases provided for by it under the operation of the original act ***." *Peoria & Eastern Ry. Co. v. Wright* (1941), 377 Ill. 626, 632, 37 N.E.2d 322, 325.

See also *People ex rel. Hoyne v. Sweitzer* (1915), 266 Ill. 459, 476, 107 N.E. 902, 908.

RECC seeks to apply the above theory to the instant case by three steps. First it notes that the Merger Act originally had no exceptions to its coverage of not-for-profit corporations, but exceptions were created when section 10a of the Merger Act applicable to corpo-

rations subject to the 1943 Act was enacted. Second, it notes that, after the enactment of section 10a, the Merger Act remained effective to all not-for-profit corporations other than those subject to the 1943 Act. (*Wright*, 377 Ill. at 632-33, 37 N.E.2d at 325; *Sweitzer*, 266 Ill. at 476, 107 N.E. at 908.) Third, the repeal of the 1943 Act brought coverage of the Merger Act back to not-for-profit corporations which were no longer subject to the 1943 Act but became subject to the 1986 Act. The problem with this analysis is that it begs the question of whether the court can apply a theory of legislative oversight to determine the effect of section 10a of the Merger Act. Seemingly, if the oversight theory cannot be applied, the express language of section 10a of the Merger Act would negate application of section 10a to the three electric cooperatives involved here without the necessity of the language quoted from *Wright* and *Sweitzer*.

■ The parties do not dispute that the first principle of statutory construction is to determine the true intent of the legislature. (*People v. Garrett* (1990), 136 Ill. 2d 318, 329, 555 N.E.2d 353, 358; *Kraft, Inc. v. Edgar* (1990), 138 Ill. 2d 178, 189, 561 N.E.2d 656, 661.) In determining this intent, a body of law permits courts, under certain conditions, to "insert into a statute language omitted through legislative oversight." *People v. Shephard* (1992), 152 Ill. 2d 489, 498; see also *People v. Chandler* (1989), 129 Ill. 2d 233, 253, 543 N.E.2d 1290, 1298.

The foregoing rule in regard to "legislative oversight" is applied most frequently to resolve ambiguity in legislative language in cases such as *Shephard, Chandler*, and *People v. Parker* (1988), 123 Ill. 2d 204, 209-14, 526 N.E.2d 135, 137-39. Others, however, concern situations similar to that here. The most notable such case is *People ex rel. Cason v. Ring* (1968), 41 Ill. 2d 305, 242 N.E.2d 267. There, the supreme court ordered a writ of *mandamus* to issue in an original proceeding ordering the county clerk of St. Clair County to conduct hearing upon applications for the erasure of names from the list of registered voters. The proceedings took place just prior to the general election in November 1968. Prior to a 1967 amendment to sections 4—12 and 4—13 of the Election Code (Ill. Rev. Stat. 1965, ch. 46, pars. 4—12, 4—13), those sections had required the clerk to accept applications for erasure of names from the list of registered voters on stated days and to hear those applications on other stated days close to an election.

In *Ring*, the 1967 amendment had changed those sections to provide that the foregoing functions should be performed in " 'the 1970 primary election for the nomination of candidates *** thereafter.' "

(*Ring*, 41 Ill. 2d at 309, 242 N.E.2d at 269, quoting from the 1967 amendments contained in House Bill 473 (eff. Aug. 14, 1967 (1967 Ill. Laws 2987, 2995-96)).) The county clerk had refused to proceed, contending he had no duty to perform these tasks until the 1970 primary election. The supreme court decided that despite the literal wording of the legislation involved, the circumstances surrounding the enactment of the amendment clearly indicated a legislative intention that the erasure procedure was to remain as it had been for many years. The court emphasized that in determining whether to give a literal interpretation to the amendment or to write in language to cure apparent oversight, the court could consider " '*other circumstances surrounding the enactment of the amendment.*' (Emphasis added.) Sutherland, Statutory Construction, §1932 (3d ed. 1943) ***.*" *Ring*, 41 Ill. 2d at 310, 242 N.E.2d at 270.

In *Trustees of Schools of Township 35 North v. Sons* (1963), 27 Ill. 2d 63, 187 N.E.2d 673, cited in *Ring*, legislation concerning the eminent domain powers of school districts had been amended in such a way that the powers of districts with a population of 1,000 to 500,000 were stated to be the same as those in districts of under 1,000 in population. The supreme court refused to give a literal interpretation to the legislation and interpreted the statute to have the same meaning as it had in the prior 50 years. In *Scofield v. Board of Education of Community Consolidated School District No. 181* (1952), 411 Ill. 11, 103 N.E.2d 640, codification of election laws concerning qualification of voters in school elections had failed to list citizenship as a requirement. The supreme court wrote that requirement into the codifying act. Similarly, in *Illinois Crime Investigating Comm'n v. Buccieri* (1967), 36 Ill. 2d 556, 561, 224 N.E.2d 236, 240, the supreme court wrote into legislation for issuance of administrative subpoenas a requirement that they be issued only upon due notice and after a hearing.

■ Section 10a of the Merger Act was enacted more than 40 years before the enactment of the 1986 Act. No reason has been given as to why the General Assembly would have wished to change that policy. If a change had been intended, the General Assembly would likely have directly repealed section 10a of the Merger Act rather than have relied upon a repeal by implication. Such a repeal is not favored. (*People v. Moffitt* (1985), 138 Ill. App. 3d 106, 116, 485 N.E.2d 513, 521.) An aspect of the enactment of the 1986 Act further indicates an intent of the General Assembly that corporations subject to the 1986 Act continued to be exempt from the Merger Act.

Sections 111.05 through 111.50 of the 1986 Act (Ill. Rev. Stat. 1987, ch. 32, pars. 111.05 through 111.50) pertain to mergers of corporations subject to the 1986 Act. The sections contain many provisions which overlap. However, section 111.20(c) of the 1986 Act provides that when a subject corporation has members entitled to vote on mergers or consolidations, membership approval of a merger may be obtained, at a meeting when a quorum is present, upon the favorable vote "of at least ⅔ of the votes present and voted either in person or by proxy" with a further provision if different classes of membership are involved. (Ill. Rev. Stat. 1987, ch. 32, par. 111.20(c).) On the other hand, at all times pertinent, section 2(4) of the Merger Act required approval on such an issue by "⅔ in number of *all the outstanding memberships or units of interest*" regardless of whether those memberships or interests are present in person or by proxy at the meeting. (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 32, par. 188b(4).) Thus, the 1986 Act permits a merger on a vote which can be less than that required by the Merger Act.

■■ The merger provisions of the 1943 Act (Ill. Rev. Stat. 1985, ch. 32, pars. 163a37 through 163a41.1) were much the same as those of the 1986 Act. Section 10a of the Merger Act was enacted to exempt the corporations subject to the 1943 Act from the provisions of the Merger Act. When the General Assembly enacted the 1986 Act, it would have been unlikely to recite in that act the details concerning mergers if that legislative body did not intend the exemption of section 10a of the Merger Act to continue in force. This intent for continued exemption is shown even more strongly by the inconsistency between the strength of the vote of members required to effectuate a merger. No reason has been advanced as to why the General Assembly would have intended for the exemption of section 10a of the Merger Act to terminate. Under these circumstances, we conclude that section 10a of the Merger Act should not be limited to a literal interpretation. Rather, the obvious legislative oversight requires an interpretation that section 10a also exempts corporations subject to the 1986 Act.

As an additional ground to support the circuit court's dismissal of count I, Soyland asserts that any ruling which would permit RECC to withdraw from the merged corporation would violate the supremacy clause of the United States Constitution because Federal law has preempted the rights of the parties here. Soyland's theory is that any ruling which permits or requires a sale of RECC's interest in the merged corporation to that corporation would violate section 907 of the Rural Electrification Act of 1936 (RE Act), which provides that

"[n]o borrower of funds *** shall, without the approval of the Administrator, sell or dispose of its property, rights, or franchises, acquired under the provisions of [the RE Act], until any loan obtained from the Rural Electrification Administration, including all interest and charges, shall have been repaid." 7 U.S.C. §907 (1988).

RECC recognizes that the pleadings show it is indebted to REA but points out that the pleadings do not indicate what the proceeds of the loans were used for. The undisputed affirmative matter alleged in Soyland's motion to dismiss does show that all of Soyland's assets are pledged to REA, and any sums used to pay for RECC's interest in WIPCO would have to come from those assets. We need not delve into the problems involved with this contention by Soyland, because our holding in regard to the meaning of section 10a of the Merger Act is enough to support the circuit court's ruling on count I.

As we have indicated, counts II, III, and IV sought a declaration that RECC was relieved of its obligation to purchase electricity from Soyland, as merged with WIPCO, and to pay Soyland for this. RECC maintains that the merger effectuated an assignment or delegation to Soyland of WIPCO's duties to RECC under the 1963 contract. RECC maintains these duties were neither assignable nor delegable. RECC maintains these duties involved personal performance, a confidential relationship between the parties, and a situation where Soyland was indebted to RECC and animosity existed between the parties. In our discussion of the assignability and delegability of duties under executory contracts, we are considering contracts where neither assignability nor delegability is expressly stated to be permissible. As far as the furnishing of electricity is concerned, that responsibility is not personal in nature and appears to be fully delegable.

The question of assignability and delegability of other responsibilities formerly undertaken by WIPCO under the 1963 contract is more complicated. Particularly perplexing is the provision of the contract which authorized WIPCO, the seller of the electricity, to fix the price to be paid by RECC based upon the expenses incurred by WIPCO in obtaining and transmitting the electricity to RECC. As between parties operating for pecuniary profit, executory contracts for supply where the purchaser determined the price have been held to be unassignable by the purchaser. (*Arkansas Valley Smelting Co. v. Belden Mining Co.* (1888), 127 U.S. 379, 32 L. Ed. 246, 8 S. Ct. 1308; *Amsco Pipe Line Co. v. Donico Production Co.* (Tex. Ct. App. 1938), 112 S.W.2d 483.) A similar rule would be logical in regard to assignments by a seller of such contracts when the seller determines the price.

■ The degree of trust and confidence placed by a party entitled to performance under a contract in the party required to perform has also been considered important in determining whether the responsibilities of performance can be delegated. (*Ginsburg v. Bull Dog Auto Fire Insurance Association* (1928), 328 Ill. 571, 572-73, 160 N.E. 145, 146; *Sloan v. Williams* (1891), 138 Ill. 43, 46, 27 N.E. 531, 532.) The prohibition against assigning or delegating duties when a confidential relationship is involved has been held to apply when the assignment arises from the merger of corporations for pecuniary profit. (*Sally Beauty Co. v. Nexxus Products Co.* (7th Cir. 1986), 801 F.2d 1001.) Animosity between RECC and Soyland has been sufficiently set forth at the pleading stage by allegations of litigation between Soyland and RECC directors.

RECC cites various cases which hold that a contractual provision entitling one party to credit from another cannot be assigned to a third party. The reasons for such a rule are obvious. The complaint indicates WIPCO did owe large sums to RECC, and now Soyland is required to make the payment. The merger does not involve any contractual provision to extend credit, but it does involve a delegation of the responsibility to make payment to the merged corporation.

In count III of the complaint, RECC relies upon section 2—210(1) of the Code, which prohibits the delegation of duties under a contract for a sale if the party to whom the duty is owed "has a substantial interest in having his original promisor perform or control the acts required by the contract." (Ill. Rev. Stat. 1987, ch. 26, par. 2—210(1).) Article 2 of the Code applies only to "transactions in goods," that is, contracts for sale of goods. (Ill. Rev. Stat. 1991, ch. 26, par. 2—102.) We do not deem section 2—210 of the Code to be applicable to the present case, because the sale of electricity, which is the subject of the 1963 contract, is not a sale to the ultimate consumer even if the voltage has been reduced by a transformer before it enters RECC's lines and even though it goes through a meter as RECC receives it. *Henderson v. Anglin* (N.D. Ill. Jan. 7, 1987), No. 86—C—1909 (Westlaw, Allfeds database) (not reported); *Singer Co. v. Baltimore Gas & Electric Co.* (1989), 79 Md. App. 461, 558 A.2d 419.

Section 111.50(d) of the 1986 Act states, in part, that upon a merger, "all property *** all debts due *** and all other choses in action, and all and every other interest *** of the corporations so merged *** shall be taken and deemed to be *transferred* to [the merged corporation]." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 32, par. 111.50(d).) Thus, the contract rights and obligations of WIPCO were "transferred" to Soyland upon the merger. Whether the "transfer" of

contractual rights and duties which takes place when a merger occurs is subject to all of the rules concerning assignability and delegability is not entirely clear. (Compare *Sally Beauty Co.*, 801 F.2d 1001; *PPG Industries, Inc. v. Guardian Industries Corp.* (6th Cir. 1979), 597 F.2d 1090, with *United States Shoe Corp. v. Hackett* (7th Cir. 1986), 793 F.2d 161; *Alexander & Alexander, Inc. v. Koelz* (Mo. App. 1986), 722 S.W.2d 311.) However, we do not determine the question of whether counts II, III, and IV state a cause of action on the basis that ordinarily a corporate merger would not subject contracts involved to general rules of assignability and delegability.

We recognize the detriment which could result to RECC when those governing Soyland rather than those previously governing WIPCO determine the amounts RECC is to pay for electricity. Count IV alleges that RECC has less representation in the merged corporation than it had before merger, and the trust and confidence RECC had in WIPCO may not exist in regard to the merged corporation. However, the 1963 contract recognized that WIPCO could take in new members. All of the detriment to which RECC complains could have resulted if WIPCO took in all of the members of Soyland under that provision rather than through merger.

The delegation of duty under the 1963 contract resulting from the merger is an internal one between not-for-profit corporations and their members rather than a delegation of duties to outsiders. We have held that RECC has no right under section 9 of the Merger Act to be bought out of the merged corporation. A contractual duty upon members of a distribution electric cooperative to continue to purchase electricity from the not-for-profit corporation of which it is a member is an inherent feature of the scheme. WIPCO's bylaws required RECC to purchase its electricity from WIPCO as long as it remained a member. For these reasons, we hold that any delegation of duties from WIPCO to Soyland did not relieve RECC from its duty to purchase its electricity from the merged corporation.

Accordingly, as we earlier stated, we affirm the order of the circuit court dismissing RECC's complaint and denying it leave to file an amended complaint.

Affirmed.

McCULLOUGH and COOK, JJ., concur.