**BAXTER HEALTHCARE CORPORATION, Plaintiff–Appellant,**

v.

**O.R. CONCEPTS, INC., Defendant–Appellee.**

No. 95–1725.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 21, 1995.

Decided Nov. 2, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied Nov. 28, 1995.

John R. Myers, argued, Kathryn D. Ingraham, Matthew A. Phillips, Bell, Boyd & Lloyd, Chicago, IL, for Plaintiff–Appellant.

Patrick S. Coffey, Deena S. Newlander, Gardner, Carton & Douglas, Chicago, IL, David B. Goroff, argued, Michael A. Ficaro, Bradley E. Riley, Hopkins & Sutter, Chicago, IL, Anthony J. Dimun, O.R. Concepts, Incorporated, Burnsville, MN, for Defendant–Appellee.

Before CUMMINGS, MANION and KANNE, Circuit Judges.

CUMMINGS, Circuit Judge.

In early 1992, Baxter Healthcare Corporation ("Baxter") and O.R. Concepts, Inc. ("O.R.") entered into an agreement that obligated Baxter to purchase from O.R. at least $3 million of Thermadrape over a 27–month period. Later that year the president of O.R. and others sold 95% of O.R.'s stock to Vital Signs, Inc. ("Vital Signs"), a competitor of Baxter.

On May 10, 1994, Baxter brought suit against O.R. seeking a declaratory judgment that, because of the sale of O.R. stock and the sale of Thermadrape to other purchasers, O.R. had (1) breached its contract with Baxter; (2) violated Section 2–210 of the Uni-

form Commercial Code ("UCC"); and (3) breached the implied covenant of good faith and fair dealing. The district court dismissed Baxter's claims pursuant to Fed. R.Civ.P. 12(b)(6). For the following reasons, we affirm.

## BACKGROUND

Baxter is a Delaware corporation that sells a wide range of products to health care providers nationwide. Some of the products are manufactured by Baxter itself, while others are purchased for resale from other distributors. O.R. is a corporation organized under the laws of Texas that also manufactures and sells products to the health care industry. One O.R. product is Thermadrape, a heat retention drape used to prevent hypothermia.

In January of 1992, Baxter and O.R. signed a distribution agreement ("Agreement") that obligated Baxter to purchase $3 million worth of Thermadrape from O.R. over a 27–month period. Prior to the Agreement, O.R. had sold Thermadrape to a small group of independent distributors. Baxter admits that it was aware of O.R.'s existing relationships with these distributors at the time it negotiated the Agreement.

In November of 1992, Jim Elder, the president and majority stockholder of O.R., advised Baxter that he and other stockholders were selling 95% of O.R.'s stock to Vital Signs. Elder remained in control of O.R. until he resigned as president in June 1993. Elder subsequently informed Baxter that Vital Signs' 120–person sales staff would begin selling Thermadrape "together with Baxter Healthcare" and that O.R. was relocating its headquarters to Minnesota. Despite the sale of stock, O.R. has at all times remained a distinct and independent corporate entity and continues to produce and sell Thermadrape and a variety of other products.

Six months after Elder advised Baxter of the stock sale, Baxter sent a letter to O.R. dated June 18, 1993 claiming that O.R. was in breach of the Agreement because the sale of stock constituted an assignment of O.R.'s interest in the Agreement to Vital Signs. Baxter asserted that such an assignment was in violation of a provision of the Agreement requiring Baxter's written consent prior to O.R. assigning its interest in the Agreement. Eleven months later, Baxter sent a second letter dated May 10, 1994 notifying O.R. that Baxter was terminating the Agreement; Baxter refused to purchase the remaining $1 million worth of Thermadrape. Baxter filed this lawsuit the same day, alleging (1) breach of contract; (2) violation of Section 2–210 of the UCC; and (3) breach of the implied covenant of good faith and fair dealing.

The entire 16–page contract was attached to Baxter's pleading and examined by the district court. The district court concluded that Baxter failed to sufficiently state a claim on each of its causes of action. Baxter appeals the district court's order to dismiss and this Court has jurisdiction of the appeal pursuant to 28 U.S.C. § 1291.

## DISCUSSION

■ This Court reviews the grant of a motion to dismiss de novo. *City Nat'l Bank of Fla. v. Checkers, Simon & Rosner*, 32 F.3d 277, 281 (7th Cir.1994). We accept all well-pleaded facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Id.* Under Fed.R.Civ.P. 8(a), a complaint need only state "a short and plain statement of the claim showing that the pleader is entitled to relief" to be sufficient. *Leatherman v. Tarrant County Narcotics Unit*, 507 U.S. 163, ——, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517. A complaint should not be dismissed unless it appears that the plaintiff can prove no set of facts in support of its claim. *Hi–Lite Prod. Co. v. American Home Prod. Corp.*, 11 F.3d 1402, 1405 (7th Cir.1993). The Baxter complaint alleged three independent causes of action, which we will address separately.

### A. Breach of Contract Claims

■ The Agreement provides that it is to be governed by Illinois law. Baxter alleged a breach of the Agreement on two independent bases. The first is that O.R. breached the Agreement because the sale of O.R. stock to Vital Signs was in violation of a non-assignability clause. Baxter concedes that no provision in the Agreement expressly prohibits the owners of O.R. from selling their

stock. However, Baxter alleges that the sale violated paragraph 11(g) of the Agreement, which provides,

"This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, provided, however, that [O.R.] shall not transfer or assign its interests in this Agreement without the prior written consent of BAXTER." [Pl.App. 34]

■ Baxter fails to demonstrate how the change of ownership of O.R. stock constitutes an assignment of O.R.'s interests in the Agreement. It is well settled that a change in corporate ownership does not constitute a variation of that corporation's contractual obligations. *U.S. Can Co. v. NLRB*, 984 F.2d 864, 868 (7th Cir.1993) ("A sale of stock, like a merger, does not affect the contractual obligations of the corporation."); *United States Shoe Corp. v. Hackett*, 793 F.2d 161, 163–164 (7th Cir.1986). Baxter ignores the most fundamental characteristic of a corporate entity: its independence. *Flynn v. Allis Chalmers Corp.*, 262 Ill.App.3d 136, 199 Ill. Dec. 408, 410, 634 N.E.2d 8, 10 (1994) ("In Illinois, a corporation is deemed a distinct legal entity, separate from other corporations with which it may be affiliated."); *Peoples Energy Corp. v. Illinois Commerce Comm'n*, 142 Ill.App.3d 917, 97 Ill.Dec. 115, 122, 492 N.E.2d 551, 558 (1986) ("The general rule ... is that holding companies and their subsidiaries are separate legal entities."). O.R. has at all times remained an independent and functioning organization. That fact has not been affected by its change in ownership. The most persuasive demonstration of this is that Baxter itself chose O.R. as the proper party to sue in this action, not its owners. Because the change in stock ownership did not change O.R.'s obligations under the Agreement, O.R.'s interests in the Agreement are still O.R.'s interests. They have not been assigned to anyone.

Baxter cites *Rural Elec. Convenience Coop. v. Soyland Power Coop.*, 239 Ill.App.3d 969, 180 Ill.Dec. 192, 606 N.E.2d 1269 (1992), as support for its claim that the stock sale should be considered a transfer of O.R.'s interest in the Agreement. In that case, Rural Electric Convenience Cooperative ("RECC") was a member of Western Illinois Power Cooperative ("WIPCO"), and was obligated by agreement to purchase electricity from WIPCO. When WIPCO merged with another cooperative, RECC claimed, inter alia, that the merger effectuated an assignment or delegation of WIPCO's duties under their agreement. RECC claimed that the assignment was a breach of contract because of the personal nature of providing electricity and the confidential relationship between RECC and WIPCO. The court affirmed the dismissal of RECC's claims.

Baxter argues that "the *Rural Electric* court decided it would not find an improper delegation of duties because the delegation was 'internal,' between a not-for-profit corporation and its members, 'rather than a delegation of duties to outsiders.' " [Pl.Br. 24]. Baxter further asserts "[t]hus, in deciding whether a stock sale or merger had effected a transfer that required a contracting party's approval, the [*Rural Electric* ] court drew a distinction between *Sally Beauty Co.*[1] (transfer to an outsider) and *United States Shoe Corp.*[2] (transfer to an insider)." [Pl.Br. 25]. Therefore, argues Baxter, the sale of O.R. stock to Vital Signs constituted an assignment of O.R.'s interest in the Agreement because it involved an "outsider."

Unfortunately, Baxter mischaracterizes the *Rural Electric* opinion. First, that case was decided based upon a statute which stated that upon a merger, "all property ... all debts due ... and all other choses in action, and all and every other interest ... of the corporations so merged ... shall be taken and *deemed to be transferred* to [the merged corporation]." Ill.Rev.Stat.1989, ch. 32, para. 111.50(d) (emphasis added). The *Rural Electric* court specifically stated that "we do not determine the question of whether [RECC] states a cause of action on the basis that ordinarily a corporate merger would not subject contracts involved to general rules of assignability and delegability." *Rural Electric*, 180 Ill.Dec. at 198, 606 N.E.2d at 1275.

---

1. *Sally Beauty Co. v. Nexxus Products Co.*, 801 F.2d 1001 (7th Cir.1986).

2. *United States Shoe Corp. v. Hackett*, 793 F.2d 161 (7th Cir.1986).

Furthermore, the only distinction the court made between *Sally Beauty* and *United States Shoe* was when it cited the cases in a parenthetical following the sentence, "[w]hether the 'transfer' of contractual rights and duties which takes place when a merger occurs is subject to all of the rules concerning assignability and delegability is not entirely clear." *Id.* *Rural Electric* is not applicable here.

It is true that this Court held in *Sally Beauty* that a merger between a contracting corporation and another corporation could constitute an assignment of the contracting corporation's rights in a contract. However, *Sally Beauty* is distinguishable. First, *Sally Beauty* involved a distribution agreement which specifically provided that it was exclusive. The agreement between Baxter and O.R. had no such provision. Second, although in *Sally Beauty* the Court did state that it could not affirm the district court's summary judgment on contractual principles of non-delegability, the case was ultimately decided based upon Section 2–210 of the UCC.[3] Finally, and most importantly, the *Sally Beauty* case involved a merger of two corporations, as opposed to a simple change of ownership. There, the contracting corporation lost its independent identity because of the merger. As we have already stated, O.R. has at all times remained an independent corporate entity whose ownership has merely changed. Therefore, *Sally Beauty* is inapplicable. Because the stockholders' sale of O.R. stock did not constitute an assignment by O.R. of its interests in the Agreement, the district court properly dismissed Baxter's claim that the sale violated paragraph 11(g) of the Agreement.

Baxter additionally alleges that O.R. breached the Agreement by competing with Baxter when it sold Thermadrape to other purchasers. Baxter again concedes that there is no provision in the Agreement which states that the O.R./Baxter relationship was exclusive, or that O.R. could not compete with Baxter. Baxter argues, however, that intrinsic and extrinsic ambiguities in the Agreement allow Baxter to demonstrate through extrinsic evidence that the Agreement was exclusive and noncompetitive. See *Bidlack v. Wheelabrator Corp.*, 993 F.2d 603, 607–608 (7th Cir.1993) (en banc), certiorari denied, —— U.S. ——, 114 S.Ct. 291, 126 L.Ed.2d 240.

■ As this Court noted in *FDIC v. W.R. Grace & Co.*, 877 F.2d 614 (7th Cir.1989), certiorari denied, 494 U.S. 1056, 110 S.Ct. 1524, 108 L.Ed.2d 764, there are two types of contractual ambiguity:

> "One is internal ('intrinsic'), and is present when the agreement itself is unclear. The other is external ('extrinsic') and is present when, although the agreement itself is a perfectly lucid and apparently complete specimen of English prose, anyone familiar with the real-world context of the agreement would wonder what it meant with reference to the particular question that has arisen."
>
> *Id.* at 620.

Illinois has largely rejected the traditional "four corners rule," which holds that if a contract is clear "on its face," no other evidence may be introduced to contradict its terms. *R.T. Hepworth Co. v. Dependable Ins. Co., Inc.*, 997 F.2d 315, 318 (7th Cir. 1993). Thus, Illinois courts may look to extrinsic evidence to discover the parties' genuine intent. However, extrinsic evidence still cannot be used to create a conflict completely apart from the contract itself. *Id.* As this Court recently stated, "there must be either contractual language on which to hang the label of ambiguous or some yawning void * * * that cries out for an implied term." *Bidlack*, 993 F.2d at 608.

■ In evaluating Baxter's claim, we will address both intrinsic and extrinsic contractual ambiguity. Baxter can point to no specific provision of the contract that creates the intrinsic ambiguity it claims exists. As previously stated, and as Baxter itself concedes, nothing on the face of the Agreement states that it is exclusive or that O.R. may not sell Thermadrape to a competitor of Baxter.

---

**3.** We discuss the facts of *Sally Beauty Co.* and its applicability to Baxter's claim that O.R. violated Section 2–210 of the UCC below.

Baxter points to a clause in the Agreement that provides Baxter with the right of first refusal to distribute any "new products in the field of Thermadrape products," thus granting Baxter an exclusive right to distribute new Thermadrape products. Baxter claims that since the Agreement contained an exclusive distribution right for new products, but did not explicitly grant Baxter an exclusive right to distribute "existing products," there is an inconsistency that "necessarily raises the question as to whether the parties intended to give Baxter exclusive rights on existing products." [Pl.Br. 29].

Baxter's argument is illogical. The fact that the parties included an "exclusive" provision regarding new products and did not include such a provision regarding existing products demonstrates only that the parties took pains to differentiate between Baxter's rights as to new and existing products, and that they did not intend to create an exclusive relationship regarding existing products. The Agreement is not intrinsically ambiguous.

■ Baxter also argues that the Agreement is extrinsically ambiguous. This is so, argues Baxter, because it received "favorable" pricing that allowed it to outbid other O.R. distributors, thus "creating" an exclusive distribution relationship. This is also so, alleges Baxter, because O.R. provided additional services under the Agreement, such as providing sales literature, customer instruction in how to use Thermadrape, free samples, field technicians to support Baxter's sales force, and monthly sales reports. Baxter claims that this extrinsic evidence shows that the lack of an exclusivity or a non-compete clause is a "yawning void" in the parties' written agreement and that such a clause should be implied. See *Bidlack*, 993 F.2d at 607 (citing *Wood v. Duff–Gordon*, 222 N.Y. 88, 118 N.E. 214 (1917) (J. Cardozo)).[4]

Baxter's situation is distinguishable from the *Bidlack* and *Duff–Gordon* cases in that the Agreement is completely workable without implying any terms: Baxter is to purchase $3 million worth of Thermadrape and O.R. is to provide it. The parties involved here are sophisticated corporations with access to legal counsel that have clearly laid out their obligations in the Agreement. They knew how to include an exclusivity and a non-compete clause in the Agreement if it was in fact agreed upon. To imply an exclusivity or non-compete clause in this situation would not make the Agreement "make more sense," as Baxter argues, but would substantially change its meaning. It would extend Baxter's exclusive distribution rights, which were expressly set aside only for new products, to existing products. Such a result would give Baxter more than it bargained for.

Baxter finally alleges in its complaint that during negotiations regarding the Agreement, Jim Elder, the majority stockholder of O.R., discussed with Baxter's representative the eventual development of an exclusive distribution relationship between O.R. and Baxter. Baxter asserts that implicit in the discussions was an understanding that O.R. would not compete with Baxter in the sale of Thermadrape products.

■ Paragraph 11(b) of the Agreement contains the following integration provision:

This Agreement is the entire agreement between the parties hereto, there being no prior written or oral promises or representations not incorporated herein. [Pl.App. 33].

As this Court stated in *Sunstream Jet Exp. v. International Air Serv. Co.*, 734 F.2d 1258 (7th Cir.1984), the general rule in Illinois is that "if the contract imports on its face to be a complete expression of the whole agreement, it is presumed that the parties introduced into it every material item, and parol evidence cannot be admitted to add another term to the agreement." *Id.* at 1265 (quoting *Pecora v. Szabo*, 94 Ill.App.3d 57, 49 Ill.Dec. 577, 581–82, 418 N.E.2d 431, 435–436 (1981)); See also *Continental Mobile Tele. v. Chicago*

4. The *Duff–Gordon* case involved an exclusive license contract to market Lady Duff–Gordon's designs. The court implied an obligation upon the licensee to use his best efforts in marketing because it was unlikely that the parties intended so one-sided a deal. As we noted in *Bidlack*, such interpolation is based upon "the structure of the contract rather than the self-serving testimony by a party." *Bidlack*, 993 F.2d at 607.

*SMSA,* 225 Ill.App.3d 317, 167 Ill.Dec. 554, 558, 587 N.E.2d 1169, 1173 (1992) ("The integration provision contained in the contract indicates that the parties intended this agreement to be their final expression, and superseded all prior discussions and agreements between the parties."). Therefore, we decline to consider Baxter's allegations as to the content of discussions during the negotiation of the contract.

Because the Agreement is neither intrinsically nor extrinsically ambiguous, we agree with the district court's decision to dismiss Baxter's claim for breach of contract based upon O.R.'s competition with Baxter in the sale of Thermadrape.

### B. *Section 2–210 Claim*

Baxter's second claim is that the sale of O.R. stock to Vital Signs constituted an assignment of O.R.'s rights and delegation of O.R.'s performance in violation of Section 2–210 of the UCC. 810 ILCS 5/2–210. Section 2–210 provides in part:

(1) A party may perform his duty through a delegate unless otherwise agreed or unless the other party has a substantial interest in having his original promisor perform or control the acts required by the contract.

(2) Unless otherwise agreed all rights of either seller or buyer can be assigned except where the assignment would materially change the duty of the other party, or increase materially the burden or risk imposed on him by his contract, or impair materially his chance of obtaining return performance.

810 ILCS 5/2–210.

Baxter claims that "O.R.'s acquisition by Vital signs constituted an assignment that materially increased Baxter's risks." [Pl.Br. 34]. However, as discussed above, Baxter has failed to show how there has been an assignment of O.R.'s interest in the Agreement or a delegation of its duties.

Baxter again cites *Sally Beauty* in support of its claim. In that case, Nexxus Products Company ("Nexxus") had entered into a contract with Best Barber & Beauty Supply Company ("Best") under which Best was to be the exclusive distributor of Nexxus hair care products throughout most of Texas. Best was subsequently merged into Sally Beauty Company. Nexxus canceled the agreement because Sally Beauty Company was a wholly owned subsidiary of Alberto–Culver Co., a competitor of Nexxus. This Court found that the merger constituted a delegation of Best's duties under the contract and violated Section 2–210 of the UCC. However, *Sally Beauty* is readily distinguishable.

The most important distinction, noted above, is that *Sally Beauty* involved a merger that caused the contracting party (Best) to actually lose its corporate identity. Because Best no longer existed after the merger, the contract had to be considered "assigned" to the new entity, Sally Beauty Company. As we have repeatedly stated, O.R. has at all times remained the party performing under the Agreement and has consistently maintained its separate corporate identity. There simply has been no assignment of O.R.'s interests in the Agreement, nor delegation of its duties. Second, the *Sally Beauty* case involved an agreement that provided Best with exclusive distribution rights and it was the distributor that was affected by a change in corporate form. These two facts placed Nexxus in a vulnerable position. Baxter is in no such position. Baxter is still the purchaser of a product which is still available to it, on the same terms that it bargained for, and from the same entity with which it bargained.

This Court in *Sally Beauty* stated, "[w]e hold merely that the duty of performance under an exclusive distributorship may not be delegated to a competitor in the marketplace—or the wholly-owned subsidiary of a competitor—without the obligee's consent." *Sally Beauty,* 801 F.2d at 1007–1008. We decline to extend that holding to a situation where there was no exclusive relationship and there has been no assignment of interests in the contract or delegation of duties. Thus, the district court properly dismissed Baxter's claim that the sale of O.R. stock violated Section 2–210 of the UCC, 810 ILCS 5/2–210.

## C. *Implied Covenant of Good Faith Claim*

Finally, Baxter alleges that O.R. breached the duty of good faith and fair dealing by competing with Baxter. Section 1–203 of the UCC provides that "[e]very contract or duty within this Act imposes an obligation of good faith in its performance or enforcement." 810 ILCS 5/1–203. "Good faith" is defined as "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." 810 ILCS 5/2–103(b).

However, under Illinois law the covenant of good faith and fair dealing is not an independent source of duties for the parties to a contract. *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443 (7th Cir.1992). Instead, the covenant merely "guides the construction of the explicit terms in the agreement." *Id.* As stated in *Kham & Nate's Shoes No. 2 v. First Bank of Whiting*, 908 F.2d 1351 (7th Cir.1990),

> " 'Good faith' is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved by the parties. When the contract is silent, principles of good faith—such as the UCC's standard of honesty in fact, UCC § 1–201(19), and the reasonable expectations of the trade, UCC § 2–103(b) ... fill the gap." *Id.* at 1357.

This is not a situation where the duty of good faith is required to "fill a gap" in a contract. There is nothing to suggest that the parties "could not have contemplated" O.R. selling Thermadrape to other buyers. In fact, Baxter admits that it knew that O.R. had previous relationships with other distributors and that those distributors would continue to bid on Thermadrape. Where Baxter and O.R. wanted an exclusive distribution relationship to exist, namely for new products, they included language in the Agreement to provide for it. They included nothing in the Agreement to prohibit O.R. from selling to other buyers. As such, O.R. was free to do so.

Baxter asks that we use the duty of good faith not to "guide the construction" of the Agreement, but to imply additional obligations that were not bargained for. But as this Court stated in *Kham*, "[f]irms that have negotiated contracts are entitled to enforce them to the letter, even to the great discomfort of their trading partners, without being mulcted for lack of 'good faith.' " *Kham* at 1357. The district court properly dismissed Baxter's claim for breach of the implied covenant of good faith.

## CONCLUSION

Baxter has failed to sufficiently state a claim on each of its causes of action. Therefore, the district court's decision to dismiss Baxter's claims is AFFIRMED with costs assessed against the plaintiff.